AUBINOE, ET AL. *v.* LEWIS, ET AL.

[No. 221, September Term, 1967.]

646

*Decided July 26, 1968.*

*Motion for rehearing filed August 23, 1968; denied September 9, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Norman M. Glasgow,* with whom were *Hal I. Lackey, Whayne S. Quin* and *Wilkes & Artis* on the brief, for appellants.

*Howard J. Thomas,* with whom were *Bradshaw, Thomas & Yeatman* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal (one of two joint appeals, the second one to be considered later) is from an order of the Circuit Court for Montgomery County (Clapp, J.) dated June 9, 1967 (Application E-177), reversing the decision of the Montgomery County Council, sitting as a District Council (District Council), of August 10, 1965, which granted the application of the appellants, Alvin L. Aubinoe and others, for a rezoning from the R-90 zone (one-family detached restricted residential) to the R-H zone (multiple-family, highrise planned residential) of 2.7953 acres of land located near the southeast quadrant of the intersection of Interstate Highway 70-S (U.S. 240) and Old Georgetown Road in Montgomery County (the subject property). The appellees, John H. Lewis, Jr., and others, are the owners of single-family dwellings in the Wildwood Manor de-

velopment which is in the general neighborhood of the subject property.

The subject property is located approximately 700 feet south of the intersection of Interstate Highway 70-S and Old Georgetown Road with frontage on the latter road of approximately 425 feet. At the time of the public hearing on the application (No. E-177) on June 28, 1965, Old Georgetown Road was scheduled for rebuilding as a major arterial limited access divided highway. Adjoining the subject property on the south is the Wildwood Medical Clinic. There is a gasoline service station to the south and east of the Medical Clinic property. The Wildwood Manor Shopping Center is to the south of the Medical Clinic and service station properties. The service station and the shopping center improvements are on land zoned C-1 (local commercial). To the east of the subject property the land is undeveloped and portions of the land have been cleared. Farther to the east there is a single-family development. To the southeast there is an extensive area developed with large well-maintained brick residences. To the west across Old Georgetown Road in an R-90 zone, there is a well-maintained stone single-family residence on a large landscaped parcel, several single-family residences and the entrance to the Walter Johnson High School. To the south of the high school, across Democracy Boulevard (which dead-ends at Old Georgetown Road across from the Wildwood Manor Shopping Center property) is the Davis Library. The Capital Beltway (Interstate 495) is approximately 4000 feet to the south of the subject property and was completed less than a year prior to the public hearing.

The application was filed by the owners of the subject property on November 30, 1964, for rezoning of the subject property from the R-90 zone to either the C-1 zone or to the R-H zone. Both the Technical Staff and the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission (Planning Board) recommended denial of the application. Two members of the Planning Board dissented, one expressing the opinion that the subject property should be rezoned to the C-1 zone and that such rezoning would be compatible with the existing C-1 uses to the south, the other dissenting member expressing the opinion that the

subject property should be zoned either C-1 or R-H. Both dissenting members did not believe that it was reasonable to expect the subject property to be developed for single-family purposes.

The R-H zone classification for the subject property is not in accordance with the Master Plan for the North Bethesda-Garrett Park and Vicinity, adopted April 4, 1962. The R-H zone (a "floating zone") was a part of the Montgomery County Zoning Ordinance when the Master Plan was adopted.

At the public hearing, substantial expert testimony was offered by both the applicants and the protestants, principally directed to the question of change in the neighborhood, traffic problems, effect of the proposed rezoning on single-family dwellings and the like. A number of documentary exhibits were offered in evidence.

The District Council, on August 10, 1965, filed an opinion indicating that it would approve the application for the R-H zone and on the same day filed an order granting this rezoning. A timely appeal was taken from this order and in due course eight protesting property owners filed a petition (and later an amendment to the petition) describing their properties, indicating that they were aggrieved by the action of the District Council, and setting out the grounds on which they challenged the action of the District Council. After answers had been filed, in which the standing of the protesting property owners to appeal as aggrieved parties had been challenged, the circuit court took additional testimony in regard to whether the appealing protesting property owners were aggrieved.

On June 9, 1967, the circuit court filed a comprehensive opinion finding that certain of the appealing protesting property owners (two of the protesting property owners had entered a nonsuit) were parties aggrieved and entitled to appeal, that there had been no sufficient change in conditions in the character of the neighborhood to justify the rezoning, that the action of the County Council was no more than a mere impermissible change of mind, and on the same day entered an order reversing the action of the District Council, from which the appeal to this Court was timely taken. In the opinion of the lower court, it was pointed out that the District Council must make

a finding that the R-H zone is compatible with the surrounding area, citing our decision in *O. F. Smith Brothers Development Corp. v. Montgomery County Council*, 246 Md. 1, 227 A. 2d 1 (1967).

In our opinion the decision in this case involves only two questions, i.e., (1) was the decision of the lower court clearly erroneous in finding that the appellees, as protesting and appealing property owners, had standing to appeal to the circuit court and (2) in the absence of an express finding by the District Council that the proposed R-H rezoning was compatible with the general neighborhood, can such a finding be implied from the opinion of the District Council in this case and, in any event, is there sufficient evidence in the case to support such a finding. We have concluded that we should hold that the finding of the lower court in regard to the standing of the appellees to appeal was not clearly erroneous and that a finding of compatibility by the District Council cannot be implied, and, in any event, there is insufficient evidence to support such a finding. We will accordingly affirm the order of the lower court of June 9, 1967.

The appellants forcefully contend that the lower court misapplied the Maryland "change-mistake" rule to the application for rezoning to an R-H zone and that the lower court erred in not finding that the decision of the District Council was "fairly debatable." Even if it be conceded that their contentions are correct, we will nevertheless affirm the order of the lower court as it is well established that if the decision of the lower court is correct for a correct reason properly before us, but not for the reason on which the lower court based its decision, this Court will affirm the decision of the lower court. See *Read Drug and Chemical Co. v. Colwill Construction Co.*, 250 Md. 406, 243 A. 2d 548 (1968) and *Schriver v. Schriver*, 185 Md. 227, 44 A. 2d 479 (1945).

This is the situation in the present case, as we will point out later in this opinion.

(1)

We now turn to the first contention of the appellants, i.e., that the appellees had no standing to appeal from the District Council's action as not being "parties aggrieved" by that action.

In *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A. 2d 289 (1967), we reviewed in some detail our prior decisions in regard to the necessary allegations and proof of aggrievement in equity and mandamus cases, on the one hand, and in statutory appeals from the Board or District Council in zoning cases, on the other. We stated the applicable principles to zoning appeals as follows:

"(a) It is sufficient if the facts constituting aggrievement appear in the petition for appeal either by express allegation or by necessary implication. *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966).

"(b) An adjoining, confronting or nearby property owner is deemed, *prima facie,* to be specially damaged and, therefore, a person aggrieved. The person challenging the fact of aggrievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved. Thus, in *Chatham Corp. v. Beltram,* 243 Md. 138, 147, 220 A. 2d 589 (1966), the party seeking rezoning offered expert testimony that there would be no diminution in value of adjoining houses—one of which was owned by the protestant — if the rezoning came about. The trial court found, on conflicting evidence, that the protestant was a person aggrieved, and we held there was no error in that ruling.

"(c) A person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved. *Wilkinson v. Atkinson,* 242 Md. 231, 218 A. 2d 503 (1966); *DuBay v. Crane, supra; City of Greenbelt v. Jaeger,* 237 Md. 456, 206 A. 2d 694 (1965); *Marcus v. Montgomery County Council,* 235 Md. 535, 201 A. 2d 777 (1964); *Pattison v. Corby,* 226 Md. 97, 172 A. 2d 490 (1961). But he will be considered a person aggrieved if he meets the burden of alleging and proving by competent evidence —either before the board or in the court on appeal if

his standing is challenged—the fact that his personal or property rights are specially and adversely affected by the board's action." (247 Md. at 144-45, 230 A. 2d at 294-95).

In the present case, the petition for appeal by the protesting property owners expressly alleged that the appellees were personally and specially affected in an adverse way because they (1) lived within 400 to 850 feet of the subject property; (2) their use and enjoyment of their residential property would be disturbed by the rezoning; (3) the subject property is located at a higher elevation than their properties and is visible from their properties; and (4) the rezoning would result in a financial detriment to the value of their properties and their investment in those properties. These allegations were put in issue by the answers filed to the petition for appeal and the lower court, quite properly, in view of our decision in *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966), took testimony upon the issue thus raised. Two real estate experts testified, one—Lowell E. Hendrick—for the petitioners and appellees, the other—E. L. Dieudonne, Jr.—for the respondents below and appellants in this Court.

The appeal from the decision of the District Council to the Circuit Court was taken by eight property owners on Chatsworth Lane, two of whom, Clark O. Kline and Josephine N. Spencer, took voluntary non-suits at the hearing in the Circuit Court. Mr. Hendrick testified in regard to the respective distances of the properties of the remaining six appealing petitioners from the subject property as follows:

| Property owner | Location on Chatsworth Lane | Distance in feet from subject property |
|---|---|---|
| James J. McAndrew | 6035 | 360 |
| Frank V. Costanza | 6040 | 530 |
| William P. Sommers | 6027 | 470 |
| Loretta F. Lewis | 6023 | 530 |
| Roger B. Garlock | 6012 | 830 |
| Spiros A. Siafacas | 6019 | 590 |

Mr. Hendrick also testified that these properties were in sight and sound of the subject property and that, in his opinion, they would suffer a financial loss of between $2000 (for the closest houses) to $1500 (for the houses slightly more distant), although he had made no studies of comparable sales in that, in his opinion, there were no high-rise zones adjacent to single-family residential subdivisions with homes of similar quality to those involved in this case. Although Mr. Dieudonne, Jr. was of a contrary opinion, there was sufficient credible evidence to support the lower court's finding that the six remaining appealing petitioners were aggrieved and had status to maintain the appeal to the circuit court. We will not hold that his finding was clearly erroneous. Maryland Rule 886a. The present case is similar in this regard to *Chatham Corp. v. Beltram,* 243 Md. 138, 220 A. 2d 589 (1966), in which the lower court found, on conflicting evidence, that the appealing petitioner was a person aggrieved. There is no contention that the six remaining appealing petitioners were not parties before the District Council, so that the appeal from the District Council to the Circuit Court was properly taken by persons having the proper status under the Montgomery County Zoning Ordinance to take and maintain that appeal.

(2)

Both the hearing before the District Council and the order of the District Council itself (August 10, 1965) occurred prior to our decision in *Beall v. Montgomery County Council,* 240 Md. 77, 212 A. 2d 751 (August 27, 1965), in which we analyzed in some detail the provisions of the Montgomery County Zoning Law in regard to the R-H zone (originally established by Ordinance 4-124, adopted February 13, 1962) and held that this zone was a "floating" zone rather than the usual Euclidean Zone and that the Maryland "change or mistake" rule did not apply to the granting or rejecting of an application for this type of zone. On the contrary, the zone is in the nature of a special exception and the vital and decisive determination by the District Council is whether the application complies with the expressed purposes for which the accomplishment of this floating zone was established. These purposes are designed to insure that this floating zone is compatible with the other exist-

ing uses in the general neighborhood of the property for which R-H zoning is sought.

The purposes for which the R-H zone was established are set forth in the Ordinance as follows:

> "The purpose of the R-H Zone is to provide suitable sites for relatively high density residential development, to accomplish economies in the construction and operation of such public services as transportation, retail shopping facilities, and other community facilities which depend upon convenient access by residents of the area, and so as to prevent undue congestion in sections of the County where such facilities are not available or cannot be conveniently and economically provided. These sites will provide a maximum of light, air, and open space, for the benefit of the residents of the development and for the surrounding area. Within the limits of these requirements, it is the purpose of the R-H Zone to provide the maximum possible amount of freedom in the design of residential structures and their grouping and layout within the areas classified in that zone; to prevent detrimental effects to the use or development of adjacent properties or the general neighborhood; and to promote the health, safety, morals, and welfare of the present and future inhabitants of the district and of the County as a whole."

It is vitally important that the District Council make appropriate *express findings* based on adequate evidence that the purposes set forth in the Ordinance for the R-H zone exist and that the project is compatible with the existing uses in the general neighborhood. We held in *Bujno v. Montgomery County Council,* 243 Md. 110, 220 A. 2d 126 (1966), however, that in a proper case—arising before our decision in *Beall*—we could *infer* that the necessary findings had been made by the District Council. In *Bujno,* the opinion of the District Council indicated the unique location of the site, the amount of lot coverage permitted in the R-H zone and most importantly that

"there was expert testimony submitted by the applicant that the R-H zone is most suitable for this tract."

In the present case, the portion of the opinion of the District Council dealing specifically with the R-H zone is as follows:

"The Council finds that development of this property in the R-H Zone with its substantial set back requirements will have no detrimental effect on any single-family residence in the area. Considering the recent improvement to the nearby roads and the immediately planned improvement of Old Georgetown Road, as well as many other recent developments in the neighborhood, the Council further finds that there has been sufficient change to warrant this reclassification."

The District Council did not purport to find that the purposes of the R-H zone were met by the application, or that there was testimony which indicated compatibility with the uses in the general neighborhood. The finding was limited to a determination that the R-H zone "will have *no detrimental effect* on *any single-family residence* in the *area.*" (Emphasis supplied.) There were, however, other important uses in the general neighborhood, some public or quasi-public such as the Walter Johnson High School and the Davis Library, and also the adjacent Medical Clinic. Although detrimental effect upon single-family residences is one of the elements to be considered by the District Council in reaching the conclusion that the application for R-H zoning does comply with the express purposes and is compatible with the uses in the general neighborhood, it is apparent to us that the limited finding of the District Council in this case—confined to detrimental effects on one use only and in an undefined "area"—is not one from which we could infer, as we did in *Bujno,* that the District Council did find conformance to the purposes of the R-H zone and compatibility with the uses in the general neighborhood.

Even more important, in our opinion, is the lack of evidence which would support a finding of conformance to the expressed purposes of the R-H zone and compatibility with the uses in

the general neighborhood. Mr. Tuemmler, the expert land planner, who testified for the applicants, made it clear that in his opinion the land should be rezoned to the C-1 zone. He stated: "I cannot recommend to you any other use for this property but commercial use." Mr. Tuemmler's testimony thus negatives any finding of compatibility of the R-H zone with existing uses or conformity to the purposes of that zone. Mr. Dieudonne, the real estate appraiser, submitted a written "statement" on behalf of the applicants in which he indicated that, in his opinion, R-H zoning would be "a logical transition from the commercial through the Medical Building and into multifamily use near the quadrant of the Interstate Route and Old Georgetown Road." He also indicated that, in his opinion, he had not seen any adverse effect on land values, residential desirability or valuation. He also stated that "the standards set forth in the R-H zoning classification provide the type of development that is compatible with adjacent residential development," and then recited certain requirements of the R-H zone in regard to lot coverage, green area and height, noting that site approval was required. Mr. Dieudonne is not a land planner and did not purport to express an opinion that the R-H zone purposes were complied with or that the R-H zone was compatible with the uses in the general neighborhood. He properly limited his opinion to the question of adverse effect upon the value of the single-family residential property in the vicinity of the subject property. The traffic report of Burton H. Sexton was not a comprehensive traffic survey of the general neighborhood, but was limited to the traffic aspects of a particular site plan. He concluded that it would be necessary to adjust the entire design in cooperation with the property to the south on which the Medical Clinic was to be constructed. We conclude that there was no sufficient evidence upon which the District Council could have predicated a finding of compliance with the purposes of the R-H zone and of compatibility with the uses in the general neighborhood, even assuming, *arguendo,* that it could be inferred that the District Council sought to make such a finding—an inference which we have already indicated cannot be made in this case.

We reaffirmed our holdings in *Beall* and *Bujno* that in or-

der to grant R-H zoning there must be a finding by the District Council that the R-H zone is compatible with the general neighborhood in *Tauber v. Montgomery County Council,* 244 Md. 332, 223 A. 2d 615 (1966). As the lower court stated, in *O. F. Smith Brothers Development Corp. v. Montgomery County Council,* 246 Md. 1, 227 A. 2d 1 (1967), *supra,* we reaffirmed the same principle in regard to the R-T zone in Montgomery County, also a "floating" zone, citing with approval and following our decision in *Tauber.* See also *Wahler v. Montgomery County,* 249 Md. 62, 238 A. 2d 266 (1968); *Bigenho v. Montgomery County,* 248 Md. 386, 237 A. 2d 53 (1968); *Shoreham v. Randolph Hills,* 248 Md. 267, 235 A. 2d 735 (1967); and *Knudsen v. Montgomery County Council,* 241 Md. 436, 217 A. 2d 97 (1966).

## *Second Appeal in regard to the 21.7637 acre Tract*

In addition to the appeal previously discussed, involving Application E-177, filed November 30, 1964, in regard to the 2.7953 acres of land, the appellants, who had purchased the 2.7953 acre tract, filed Application E-530 on November 23, 1965, to rezone a tract of 21.7637 acres of land (the tract), located at the southeast corner of the intersection of Interstate Highway 70-S (U. S. 240) and Old Georgetown Road from the existing R-90 zone to the R-H zone. The tract is the undeveloped land lying to the east and north of the 2.7953 acres of land already above described. The tract varies in elevation, and is predominantly wooded, although the southeasterly portion of the tract along Yorkshire Terrace has been cleared and graded. In 1959 a preliminary plan of subdivision for the development of single-family houses was approved. To the east and south of the tract there is a substantial area developed with large, well-maintained brick single-family homes.

The application was filed by the appellants on November 23, 1965. The Technical Staff filed its report on December 21, 1965, pointing out that the District Council on January 14, 1964, had denied a similar request for R-H zoning (Application C-1133)—which action was appealed to the Circuit Court and was still pending—and giving its reasons why it was of the opinion that Application E-530 should be disapproved. The

Planning Board, with one member absent and with the chairman dissenting, followed the recommendation of the Technical Staff and recommended that Application E-530 be denied. Substantial testimony was taken at the hearing before the District Council on February 17, 1966, and a number of documentary exhibits were offered and received in evidence. William C. Dutton, Jr., a qualified planning expert, E. J. Dieudonne, Jr., the same real estate expert who testified at the hearings in regard to Application E-177 concerning the 2.7953 parcel, and Burton H. Sexton, who also testified in support of Application E-177, appeared at the hearing before the District Council and testified in support of the granting of Application E-530. Evidence was offered on behalf of the protesting residential property owners and on behalf of The Evening Star Broadcasting Company, owners of radio station WMAL.

The District Council on April 26, 1966, filed its opinion and resolution to grant Application E-530, indicating its disagreement with the recommendation of the Technical Staff and Planning Board. The District Council was of the opinion that the potential traffic problem suggested by the Staff and the natural increase in traffic which would result from a change from R-90 to R-H zoning would be taken care of by the fact that the traffic would not exceed the design capacity of improved Old Georgetown Road and that the nearness of I-70-S, U.S. 270 and the Capital Beltway would provide ideal high-speed access which would tend to alleviate any severe traffic bottlenecks. The opinion of the District Council then stated:

> "The required set backs and green space requirements of the R-H ordinance and the site plan approval vested in the Department of Inspection and Licenses by that ordinance will provide adequate protection of the surrounding single-family developments."

An appeal from the resolution of the District Council to grant the application was duly taken to the Circuit Court by the same protesting property owners (except one) who had taken the appeal from the decision of the District Council in Application E-177, Law No. 17,831. By agreement of counsel, the testimony taken on the question of aggrievement in regard

to Application E-177, Law No. 17,831 was made applicable to the appeal in regard to Application E-530, Law No. 19,294.

The Circuit Court was of the opinion that its opinion in Law No. 17,831 holding that the appealing protesting property owners were parties aggrieved was equally applicable to the appeal in Law No. 19,294; that the prior action of the District Council in Application C-1133 on January 14, 1964, denying R-H zoning for the tract because such zoning was incompatible with the neighborhood, without any changes in the meantime (except the change in zone of the 2.7953 acre parcel in Application E-177, held invalid in Law No. 17,831) was binding on the District Council in Application E-530; and that a departure by the District Council from that prior ruling represented an impermissible change of mind by the District Council. By an order, also dated June 6, 1967, the Circuit Court reversed the action of the District Council of April 26, 1966, granting Application E-530. A timely appeal was taken to this Court by the applicants. The appeal in Law No. 19,294 and in Law No. 17,831 were joint appeals and were argued together, although separate briefs and record extracts for each appeal were filed in this Court.

In our opinion, the same two questions involved in the appeal in Law No. 19,294 are the questions which were substantially presented in the appeal in Law No. 17,831 already considered above.

(1)

As we have stated, the evidence in regard to the issue of aggrievement is identical in the two appeals and it is apparent that our decision should be the same. We cannot hold that the finding of the lower court that the appealing protesting property owners in Law No. 19,294 were parties aggrieved was clearly erroneous, for the reasons above set forth on this point.

(2)

Our opinion in *Beall* was filed on August 27, 1965, approximately three months *prior* to the filing of Application E-530 on November 23, 1965, and some eight months prior to the decision of the District Council on that application on April 26, 1966. We indicated in *Beall* that the District Council must find

that the application for R-H zoning complies with the purposes of the R-H zone, which, as we have already stated, are designed to insure that the floating zone is compatible with the other existing uses in the general neighborhood of the property for which R-H zoning is sought. There was no problem in *Beall* in regard to such a finding by the District Council. As we have above indicated, in *Bujno* we held that in a proper case—arising prior to our decision in *Beall*—we could *infer* that the necessary findings had been made by the District Council, but we stated in our opinion in *Bujno* :

> "It is, however, much more desirable to have a specific finding of compliance with the purposes of the R-H zone and doubtless this will appear when appropriate in future decisions of the Council." (243 Md. at p. 119, 220 A. 2d at p. 131.)

Our opinion, however, in *Bujno* was not filed until June 8, 1966, or something over a month *after* the District Council's decision in regard to Application E-530, so that the District Council did not have the benefit of our statement that there should be a specific finding of compliance with the purposes of the R-H zone and the compatibility of the proposed R-H zoning with the uses in the general neighborhood. Under the circumstances, we will again seek to ascertain whether or not the necessary finding by the District Council can be inferred from the opinion in regard to Application E-530. We wish to make it clear, however, that we will expect that resolutions of the District Council granting R-H zoning subsequent to the filing and availability of our opinion in *Bujno,* contain the specific finding required. If such a specific finding is not in the opinion or resolution of the District Council, we will then infer that the District Council did not intend to, or from the evidence could not, make the necessary finding.

The opinion of the District Council in regard to Application E-530 on this point is quite similar in effect to the opinion of the District Council on the same point in regard to Application E-177. In the latter opinion of the District Council, it was indicated that the development of the property in the R-H zone *"will have no detrimental effect on any single-family*

*residence in the area,"* while in the former opinion of the District Council (the one we are now considering) the statement was that the required set backs and green space requirements and the required site approval *"will provide adequate protection of the surrounding single-family developments."* Here again, the District Council did not purport to find that the application complied with the purposes of the R-H zone, or that there was testimony which indicated compatibility with the uses in the general neighborhood. As we have stated above, there were other important uses in the general neighborhood which must be considered in reaching the required finding. Protection of the surrounding single-family developments is one of the elements to be considered by the District Council in reaching its conclusion that the application does comply with the R-H zone purposes and is compatible with the uses in the general neighborhood, but the limited finding of the District Council in regard to Application E-530—confined to the protection of one use only in the "surrounding" area—is not one from which we could infer that the District Council did find conformance to the purposes of the R-H zone and compatibility with the uses in the general neighborhood.

Although the evidence on the question of conformance with the expressed purposes of the R-H zone and compatibility with uses in the general neighborhood at the hearing on Application E-530 is stronger than was the testimony on the same issue at the hearing on Application E-177, we are of the opinion that it is not sufficient to support the necessary finding. Mr. Dutton's testimony was principally directed at the effect of R-H zoning on the adjoining single-family residential area, but he gave no specific testimony in regard to its effect on the other uses in the general neighborhood. He did state "that sites that do lend themselves to high density development with a minimum of neighborhood disturbance should be encouraged to do so," but .this does not express an opinion on compliance with the purposes of the R-H zone or compatibility with the uses in the general neighborhood.

It is also clear that Mr. Dutton—quite naturally—based his testimony on the assumption that the 2.7953 acres of land already zoned R-H by the District Council was an integral part

of the entire proposal for the R-H development of the tract. The inclusion of the 2.7953 acres of land in the contemplated R-H development gave increased access to the tract and this inclusion affected the entire project generally as well as the traffic problems involved. Mr. Dutton stated:

> "In fact, it would appear that the determination made in the rezoning of the adjoining property in Application E-177 would apply even more appropriately to the enlarged site, now available for unified development under one owner."

It is apparent that our affirmance of the order of the lower court reversing the action of the District Council in granting R-H zoning in Application E-177 gravely impairs the value of testimony predicated upon the assumption of the validity of the District Council's action in regard to Application E-177.

The observations in regard to Mr. Dutton's testimony are generally applicable to the testimony of Mr. Sexton and Mr. Dieudonne. Mr. Dieudonne limited his testimony to the question of adverse effect upon the value of single-family residential property in the vicinity of the proposed R-H development. He did not purport to express an opinion that the R-H zone purposes were complied with or that the R-H zone was compatible with the uses in the general neighborhood. We conclude that there was no sufficient evidence which would have supported the necessary finding by the District Council, even assuming, for the purposes of the argument only, that it could be inferred that the District Council sought to make such a finding—an inference which, however, cannot be made for the reasons already set forth.

We do not find it necessary to pass upon the question of *res judicata* or other questions presented to us.

> *Orders of June 9, 1967, in both appeals affirmed, the costs to be paid by the appellants.*