PRINCE GEORGE'S COUNTY, MARYLAND
*v.* MEININGER ET AL.

[No. 123, September Term, 1971.]

*Decided January 17, 1972.*

The cause was argued before HAMMOND, C. J., and
BARNES, FINAN, SINGLEY and SMITH, JJ.

*Jess J. Smith, Jr., Associate County Attorney,* with
whom was *Walter H. Maloney, Jr., County Attorney,* on
the brief, for appellant.

*Bill L. Yoho,* with whom were *Robert A. Diemer, Robert S. Hoyert, Roy W. Hooten, Joseph F. McBride, Kenneth A. Lechter* and *Hoyert, Diemer, Yoho, Hooten & McBride* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

In this appeal the appellant, Prince George's County, Maryland (County), attempts to overturn an order of the Circuit Court for Prince George's County (Taylor, J.) which reversed a decision of the District Council of the County denying the appellees' application for a special exception for a gasoline station.

The appellees, Loretta B. Meininger, Donald Meininger and Shirley Meininger, filed their application for a special exception with the District Council on January 9, 1970, pursuant to §§ 28.11 and 28.317 of the County Zoning Ordinance.[1] The subject property is located on the northeast corner of U. S. Route 1 and Indian Lane in College Park, Maryland, and contains approximately 36,451 square feet. The property is currently zoned C-2 (general commercial).

The appellees emphasized that their operation would be a multi-pump "gasoline selling place," distinguished from other service stations in that there would be no service bays as they do not intend to perform any repair service. There would be an automatic car wash and they aspired to a 24 hour, around-the-clock operation.

Prince George's County Code, Appendix B, "Zoning," Vol. 1 § 28.2 entitled "General Provisions" provides:

"A special exception may be granted when the council finds that:
"(a) The proposed use is in harmony with the purpose and intent of the General Plan for the physical development of the district, as embodied

1. Prince George's County Code, Appendix B, "Zoning," Vol. 1, p. 331 et seq.

in this ordinance and in any master plan or portion thereof adopted or proposed as part of said General Plan.

"(b) The proposed use will not affect adversely the health and safety of residents or workers in the area and will not be detrimental to the use and/or development of adjacent properties or the general neighborhood."

And § 28.317 (o) of the Zoning Ordinance, states:

"(o) In addition to the General Provisions of Section 28.2 of this Ordinance, the District Council must make the following findings that the proposed use: (1) will have no detrimental effects on vehicular and pedestrian traffic; (2) is necessary to the public in the surrounding area; and (3) must not restrict the availability or upset the balance of land usage in the area for other trades and commercial uses. (Adopted 12-10-68.)"

After a public hearing before the District Council held on March 18, 1970, the Council denied the appellees' application stating in its written decision of July 14, 1970:

"It is apparent that this section of Baltimore Avenue is abundantly supplied with filling stations. We have not been shown that another station is necessary to the people in the surrounding area. * * * We are not able to say that the proposed use will not adversely affect the health and safety of residents or workers in the area and will not be detrimental to the use and/or development of adjacent properties or the general neighborhood. * * *

"To grant this application may well upset, if not already upset, the balance of land usage in the area."

The appellees ensuing petition for reconsideration was also denied by the District Council on August 18, 1970.

The Meiningers filed a timely appeal from the Council's decision in the Circuit Court for Prince George's County in which they alleged that the Council's denial of their application and the accompanying findings of fact and conclusions were unsupported by competent, material and substantial evidence and furthermore were against the weight of the evidence presented at the public hearing. They requested that the circuit court reverse the District Council on the basis that the denial of their application was arbitrary and capricious. The circuit court was disposed to agree with the appellees and in one part of its opinion stated:

> "The record is replete with substantial evidence to show that the *applicants assumed the burden and showed by a preponderance of the evidence* that the proposed use would not have an adverse affect on health and safety, nor be detrimental to adjacent properties, or the general neighborhood. The applicants further showed by a *preponderance of the evidence* a need of the station to the people in the surrounding area." [Emphasis supplied.]

The lower court made an unfortunate choice of language in its opinion when in judging the correctness of the decision of the District Council, it did so by viewing its action in light of the preponderance of evidence rule, finding that the petitioner had, by a preponderance of the evidence, presented sufficient facts to justify the granting of the special exception. Even were we to assume, *arguendo,* that what the lower court meant was that the evidence in the record supporting the granting of the special exception was so conclusive as to have rendered the question of the denial of the special exception not fairly debatable (cf. *Agneslane, Inc. v. Lucas,* 247 Md. 612, 615, 233 A. 2d 757 (1967)), we would

still have to disagree with its assessment of the evidence. For the lower court to have been correct in its holding it would have had to have found, and the record would have had to have shown, "that the action of the District Council was unsupported by competent, material and substantial evidence, and therefore, was arbitrary and capricious." *Board v. Oak Hill Farms,* 232 Md. 274, 284-285, 192 A. 2d 761 (1963). See also *Rockville Fuel v. Board of Appeals,* 257 Md. 183, 191, 262 A. 2d 499 (1970); *Deen v. Baltimore Gas & Electric Company,* 240 Md. 317, 323-324, 214 A. 2d 146 (1965); *Montgomery County v. Merlands, Inc.* 202 Md. 279, 292, 96 A. 2d 261 (1953). A review of the testimony in the case at bar persuades us that there was sufficient evidence in the record to render the issue of the granting of the special exception by the District Council fairly debatable and hence the lower court could not overturn its decision on appeal. *Gerachis v. Montgomery County Board of Appeals,* 261 Md. 153, 156-157, 274 A. 2d 379 (1971); *Board of County Comm'rs for Prince George's County v. Luria,* 249 Md. 1, 6, 238 A. 2d 108 (1968); *Furnace Branch Co. v. Board,* 232 Md. 536, 540, 194 A. 2d 640 (1963); *Crowther, Inc. v. Johnson,* 225 Md. 379, 383, 170 A. 2d 768 (1961).

Since the law only requires that there be substantial evidence to support the finding of the District Council, that is, more than a scintilla of evidence (*Kirkman v. Montgomery County Council,* 251 Md. 273, 277-278, 247 A. 2d 255 (1968)), it would serve no useful purpose to review in detail the testimony in support of the conclusion reached by the District Council. It suffices to say that there was introduced into evidence by the witness, Robert A. Edwards, City Administrator of the City of College Park, a study prepared for that community by Allan M. Voorhees & Associates, entitled, "Driveway Accidents and Land Use," which exhibit was explained in detail by Mr. Edwards. This study, which purported to correlate the relationship of land use and accidents along

U. S. Route 1, in the College Park area, tended to substantiate that the granting of the special exception at the proposed site would result in two additional traffic accidents a year. Mr. Edwards further testified that it was his opinion that a filling station at the intended location would adversely affect vehicular traffic on U. S. Route 1. The same witness testified as to the "need" for the station and emphasized that the economic justification for its location at the proposed spot would not stem from a need generated by the surrounding community but by virtue of the need of transient customers. Indeed, in regard to the need for the service station in this particular area, one of the applicants' witnesses testified, on cross-examination, that a vehicle running out of gas in front of the proposed site might well coast to a presently existing service station. Mr. Edwards further testified that the concentration of the particular type of land use proposed, such as a gasoline station or drive-in restaurant, restricted the use of the land for other trades and commercial purposes, and would thus upset the balance of land usage contrary to the express provisions of the Zoning Ordinance.

Additionally, again through Mr. Edwards, there was introduced as an exhibit a letter from the City of College Park containing an excerpt from the city council meeting held on March 10, 1970, at which time the Mayor and City Council of College Park voted to disapprove of the request for the special exception stressing among their reasons that there was an overabundance of gasoline stations in the area, that there was no demonstrated need for another, and that the intended use was not in conformity with the master plan.

We have heretofore in this opinion quoted pertinent parts of Section 28.2(b) and Section 28.317(o) of the Zoning Ordinance. The evidence which we have referred to above certainly raises debatable issues in the teeth of both of these sections of the Ordinance. We would further stress that this evidence was more than just a

"scintilla." *Kirkman v. Montgomery County Council,
supra.* Furthermore, in view of the recent statements of
this Court in *Eger v. Stone,* 253 Md. 533, 542, 253 A. 2d
372 (1969), and *Neuman v. Mayor and City Council of
Baltimore,* 251 Md. 92, 97, 246 A. 2d 583 (1968), the
District Council could have properly considered all of
this evidence, even though some of it may have been
characterized as hearsay and if they chose to believe it
and found it of probative force, could have relied upon
it to support its decision. We also are mindful that in
*Brouillett v. Eudowood Shopping Plaza,* 249 Md. 606,
608, 241 A. 2d 404 (1968), we stated:

> "* * * The zoning authority is presumed to
> possess the expertise necessary for deciding the
> matters brought before it and if its decision is
> based on substantial evidence then the courts
> may not substitute their judgment for that of
> the zoning authority. * * *"

What we have stated in this opinion does not gainsay
the fact that the appellees presented a most strong and
logical case. Indeed, had we been sitting in the place of
the District Council we might well have decided to
grant the special exception. However, as noted above,
this is beside the point, as neither this Court nor the
lower court may substitute its judgment for that of the
zoning authority, if, absent a constitutional question, the
issue decided is fairly debatable. *Gerachis, supra; Rock-
ville Fuel, supra; Eger v. Stone, supra;* and *Wakefield v.
Kraft,* 202 Md. 136, 141, 96 A. 2d 27 (1953), to cite but
a few of many precedents.

Finally, the appellees have filed in this appeal a mo-
tion objecting to a $227.00 charge included in the ap-
pellant's statement of costs as an overtime charge. A
review of the record reveals that the appellees' position
is well taken as the appellant was granted two extensions
of time to file its brief, and in this situation we feel that
to burden the appellees with the overtime charge would

be unwarranted. The order shall therefore direct the appellant to pay this portion of the costs.

> *Order reversed, case remanded for the passage of an order affirming the decision of the District Council; appellees to pay costs minus $227.00 overtime charge; appellant to pay $227.00 overtime charge.*