GREGORY A. FLOYD ET AL. *v.* COUNTY COUNCIL OF
PRINCE GEORGE'S COUNTY ET AL.

[No. 1958, September Term, 1982.]

*Decided June 17, 1983.*

The cause was argued before LISS, BISHOP and GETTY, JJ.

*Wayne K. Curry,* with whom were *Russell W. Shipley* and *Shipley, Curry & Taub, P.A.* on the brief, for appellants.

*V. Paul Zanecki,* with whom were *Rita P. Mannheimer* and *Zanecki, Lally & McDonough* on the brief, for appellee Nash. *John F. Shay, Associate County Attorney for Prince George's County,* with whom were *Thomas P. Smith, County Attorney for Prince George's County, Michael O. Connaughton, Deputy County Attorney for Prince George's County,* and *Steven M. Gilbert, Associate County Attorney for Prince George's County,* on the brief, for appellee County Council of Prince George's County.

LISS, J., delivered the opinion of the Court.

This is an appeal by Gregory A. Floyd, *et al.,* appellants, from a final order of the Circuit Court for Prince George's County, Maryland, affirming the decision of the County Council of Prince George's County, Maryland, sitting as the District Council, which granted a rezoning application filed by appellee Donald S. Nash.

Appellant raises two questions to be decided by this appeal:

1. Did the Circuit Court err by admitting into the record an amendment to the General Plan that was enacted subsequent to the Council's grant of the requested rezoning?

2. Is there substantial record evidence to support a conclusion that Nash's proposed development meets the require-

ments enumerated in Prince George's County Code, § 27-591 (b)?

On July 30, 1981, Donald S. Nash, owner of the property which is the subject of this zoning appeal, made an application for rezoning of the property, which had been zoned O-S and R-A,[1] to the E-I-A (Employment Institutional Area) category, a Comprehensive Design Zone. Joining in the application with Mr. Nash were Charles S. Dukes, Trustee for the University of Maryland Foundation, and Stuart C. Fisher and Charles S. Shaw, contract purchasers.

The property consists of approximately 466 acres on the northeast quadrant of Route 50 and Crain Highway. Bounded on the west by Crain Highway, on the south by Route 50, and on the east by the Patuxent River, the property is located within the Bowie-Collington Master Plan Area.[2]

In Prince George's County, an application for a Comprehensive Design Zone must include a basic plan (Pr. Geo. Co. Code, § 27-579), which must be reviewed by the Planning Commission Technical Staff and the Planning Board (§ 27-581). Nash's Basic Plan set forth a proposal for a major office research center for scientific, educational, commercial, research and trade association activity to be known as the Maryland Science and Technology Center. The Center, designed as a cooperative effort between the private sector and the University of Maryland Foundation, would provide a campus-like setting for a major research-oriented office community. Robert Smith, representing the University of Maryland Foundation, testified at the public hearing that the idea for the Center was sponsored by University of Maryland President Dr. John Toll, who believed that "there should be in the State of Maryland for the benefit of the

---

1. The O-S Zone allows a single-family residential development on five-acre lots, and the R-A Zone allows such development on two-acre lots.

2. This plan was approved and adopted in 1970, and was implemented by the Bowie-Collington Sectional Map Amendment, which was approved and adopted in 1975.

University and for the economic development of the State, a major research park, not unlike the facilities at Stanford and the Research Triangle and Princeton's Forrestal Park," and that "this is a contribution the University of Maryland can make to the citizens of Maryland, and more particularly to the National Capital area." The office and research center would provide employment for recent Maryland graduates, would develop the State's economic base, and would enhance the University's image and prestige.

The proposed development is mammoth. It contemplates construction of 7,700,000 square feet of floor space. This is equal to 150% of all existing commercial floor space in Prince George's County. Development is proposed in two phases. The first phase of development calls for construction of 1,950,000 square feet of floor space, which would cause 3,000 persons to utilize the site. Completion is scheduled between 1988 and 1990. Phase II development envisions construction of an additional 5,750,000 square feet of floor space, which would bring 8,846 more persons to the site. Phase II development is to be completed between 1991 and 2000. Buildings will range in height from two to sixteen stories.

The application was considered under a "fast track" system which gave it priority status and resulted in expedited consideration and review. Prior to public hearing, the Basic Plan was reviewed by the Bowie Advisory Planning Board and the Bowie City Council. In a Memorandum dated August 26, 1982, the Bowie Advisory Planning Board unanimously recommended approval of the Basic Plan for the Center. The Bowie City Council recommended approval of the project on September 14, 1981.

The Technical Staff of the Maryland-National Capital Park and Planning Commission, although suggesting significant limitations on the size of the project, recommended approval of the rezoning in its report dated September 1, 1981. After a public hearing, the Prince George's County Planning Board, on October 1, 1981, approved the requested zoning, subject to various conditions, but without the size limitations suggested by the Technical Staff.

The Zoning Hearing Examiner conducted a hearing and after considering the testimony and exhibits, recommended denial of the application, on November 30, 1981, based on determination that the application failed "to come even close to the recommendations of the Master Plan."

Following the Planning Board and Zoning Hearing Examiner's decisions, oral arguments were held before the District Council for Prince George's County on January 11, 1982. Subsequently, in Zoning Ordinance No. 2-1982 the District Council approved the Nash rezoning, as the Planning Board had recommended, and included ten conditions to be satisfied by the developer before building permits could be issued. These conditions imposed restrictions on development of the property reflecting staging, planning and environmental concerns.

The District Council's action in approving Nash's rezoning application and basic plan is the first phase of a three-phase process under the Prince George's Zoning Ordinance.

Section 27-327 (b) provides that E-I-A zoning involves first, review of a "basic plan," second, review of a "comprehensive design plan," and third, review of a "specific design plan." The basic plan shows the types and amounts of land use on the site; the Comprehensive Design Plan shows land use locations, circulation systems, and development staging; and the specific design plan shows site design for each portion of a development to be constructed at the same time. After approval of a specific design plan and final subdivision approval, an applicant may obtain building permits and start construction.

The Council's approval was conditioned upon ten requirements related to transportation and Master Plan issues, which must be satisfied in the remaining stages of the Comprehensive Design Zone process. A failure to meet these conditions would prevent the issuance of necessary building, grading and use permits, and result in revocation of the approved E-I-A zoning. Pr. Geo. Co. Code § 27-596. Four of the conditions concerned transportation facilities, three concerned compliance with Master Plan requirements. Addi-

tional conditions adopted by the District Council contained an open space requirement, an environmental setting for a historic site on the Nash property,[3] and an amendment to the basic plan for the provision of a hiker and equestrian trail.

The appellants filed a B rule appeal to the Circuit Court for Prince George's County on February 11, 1982, contesting the decisions of the District Council. On appeal, Nash sought to supplement the record below by requesting the Circuit Court to consider evidence of a sewer area change and an amendment to the General Plan for Prince George's County. Because these changes had been enacted subsequent to the Council's hearing, and were not part of the record, Floyd moved to exclude the evidence. The motion was granted as to the sewer area change, but denied as to the General Plan Amendment.

After a hearing on December 21, 1982, the trial judge affirmed the District Council's approval of the zoning, finding that substantial evidence was presented on the record so that the decision of the District Council was neither arbitrary nor capricious.

From the ruling of the Circuit Court appellants filed this appeal on January 24, 1983. Nash's motion for expedited hearing was granted on March 9, 1983.

1.

At argument in the lower court, Nash and the Council introduced an amendment to the County's General Plan, which had been approved shortly after the Nash rezoning.[4]

---

**3.** An historic manor house on the property known as "Melford" will, with its outbuildings, old trees and surrounding gardens, be preserved and become a conference center.

**4.** Zoning Ordinance No. 2-1982, granting E-I-A zoning to the Nash property and approving his basic plan, was approved January 25, 1982. Zoning Ordinance No. 2-1982 referred specifically to the pending amendment to the General Plan, which had already been "adopted" by the Planning Board, under § 27-119.1 of the Zoning Ordinance. Council Resolution 27-1982,

The Court granted a *motion in limine* in regard to information about a sewer system area change but permitted introduction of the General Plan Amendment, accepting the document on the ground that it was merely taking judicial notice, under § 10-203 (a) of the Courts Article, Md. Ann. Code, of adopted County law relevant to the case.

The Court of Appeals has held that the judicial analysis of the propriety of a zoning authority's action shall be based on ". . . the facts as presented and conditions as they existed as of the date of the Council's action." *Board of County Commissioners v. Meltzer,* 239 Md. 144, 153, 210 A.2d 505, 510 (1965). In *Meltzer,* the Court of Appeals found that the Circuit Court's consideration of a newly adopted Master Plan designation for the property for which the rezoning was sought was improper since that change was not effective on the date of the Council's hearing. The Court in *Meltzer* held that the action of the Council was supportable even had the additional facts been before them. The Court thought that there was very little, if any, possibility that the Council would have changed its action had those facts been before them. And, it was *held* that if the Council had had this information at the time of its hearing, to consider with the other evidence produced before it, it still would not have rendered its action clearly erroneous and not fairly debatable. Therefore, the case did not require remand.[5]

Similarly, in the instant case, it is clear from the Council's decision that it was aware of and was ready to adopt the Plan Amendment when the Nash case was before it, and it is also clear that with or without this additional matter, Nash satisfied the District Council — and, apparently, the lower court — that he complied with the Master Plan standard in § 27-591 (b) (1).

approving an amendment to the General Plan, was introduced about two months later, on March 16, 1982.

5. Maryland Code, Article 66D, Section 8-106 (g) provides that after appeal additional evidence can be taken by remanding back to the Council.

In light of these facts we find no prejudicial error in the Circuit Court's admission of the Amendment into evidence.

2.

Review of the record below makes it clear that the Circuit Court correctly upheld the District Council's approval of the zoning in this case because the findings required by the District Council as set forth in § 27-591 (b) were supported by substantial evidence.

The Circuit Court opinion by Judge James Magruder Rae, the trial judge, summarized the case succinctly when he stated:

The primary thrust of the appellants is that it was the appellees' duty to develop a record to sufficiently prove to the District Council that the desired E-I-A (Employment Institutional Area) should be granted. The appellants correctly indicate that within the ordinance establishing such zone, an element of required proof, among other things, are seven sections of criteria to be considered by the District Council.[6] The Court recognizes that this type of zoning reflects the more modern-day viewpoint toward land use and zoning concepts. It allows landowners to petition to zoning authority for a change in zoning without having to show the traditional test of mistake in the initial zoning or change in the community. There are safeguards for the public in general and the surrounding area is kept from being oppressed by piecemeal or indefinite development, in that the Statute requires periodic review by the zoning authority and other governmental agencies. It further allows the development of the tract of land over a gradual period of time taking into account technological advances which from time to time occur in the fields of transportation, sewer facilities, educational, library facilities and other related required private and governmental development.

The Court is of the opinion that the applicants have correctly stated the cardinal principle of court review of the State of Maryland of the actions of a zoning board. The Court must review the entire record and consider the entire record developed before the zoning board and then the test that the Court is to apply is: "Was the action taken by the zoning board, in this case the District Council, unreasonable, arbitrary and capricious?" The Court has reviewed the three matters raised by the appellants as to why they feel there was no record to support the action of the District Council. The Court is of the opinion that the District Council did in the record cover such matters as to whether the employment area should only go to a depth of 1,500 feet of Maryland State Route 3 (Crain Highway). The obvious need is a major re-build of the interchange of Maryland State Route 3, U.S. Route 301 and U.S. Route 50 and the development of adequate sewer facilities to handle what both the District Council and the Court recognizes to be a very serious sewer load to be added to existing sewer facilities. The Court is of the opinion that the District Council did not operate in a total vacuum as to these three items and the Court recognizes that in the hearing before the zoning body there was no evidence developed in opposition to the evidence presented by the appellants on these three items. The Court is of the opinion that the test is: "Was the item considered and was there some evidence upon which the zoning board could have operated?" The Court, as a matter of law, is finding that such evidence did exist.

If a zoning decision is fairly debatable, the decision must be affirmed by the Circuit Court. *See, e.g., Prince George's County v. Meinenger,* 264 Md. 148, 285 A.2d 649 (1972).

In *Northampton v. Prince George's County,* 273 Md. 93, 100, 327 A.2d 774, 778 (1974), the Court of Appeals stated:

> When an appeal is taken in a case like this, the function of the circuit court is a limited one: it reviews the entire record to determine whether the action of the district council was unreasonable, arbitrary or capricious. [Citations omitted].
>
> [I]t is not the function of the reviewing court to zone or rezone, or to substitute its judgment for that of the zoning authority if the action of the zoning authority is based on substantial evidence and the issue is thus fairly debatable. [Citations omitted]. *Id.,* at 101.

Floyd contends that the evidence fails to support the conclusions that the proposed development provides a sufficient transportation system, an adequate sewage system, required utility service, and is in conformity with the applicable Master Plan.

Nash submitted an extensive basic plan, numerous other exhibits, and testimony from a traffic expert, a planning expert, and a water and sewer engineer at the hearings before the Zoning Examiner and the District Council. The records and briefs are replete with evidence on the issues of transportation, sewage system, and utility system to support the conclusion of the Circuit Court that there was "evidence upon which the Zoning Board could have operated."

Conformity with the Master Plan, however, presents a different issue. The Zoning Hearing Examiner's recommendation for denial of the rezoning was based primarily on differences between the Nash Plan and the Master Plan.

The subject property is within the Master Plan for Bowie/Collington and Vicinity, which includes a provision that employment development beyond 1,500 feet east of Crain Highway (Route 3) be precluded, consistent with the Master Plan goal of maintaining low density development between Route 3 and the Patuxent River.

Nash's plan envisions substantial construction 2,400 to 4,800 feet east of Crain Highway.

Floyd urges that this non-compliance with the Master Plan map should require disapproval of the Nash application.

Nash sought to show, by expert testimony, that all guidelines in the Master Plan text were satisfied and that partial noncompliance with the Master Plan map was not inconsistent with the purpose and intent of the Plan, since his application conformed to the Plan's "principles."

In his basic plan Nash addressed at length the many guidelines in the text of the Bowie/Collington Master Plan of 1970. At the public hearing before the Zoning Hearing Examiner, Mr. Bruce Yoder, an expert witness on land use planning, addressed the Master Plan requirement and explained how the basic plan satisfied it.

He stated that the plan map showed a "conditional employment area" in the vicinity of the Nash property, and he explained that the Master Plan guidelines were followed extensively in the basic plan. He addressed at some length the environmental limitations shown in the plan for the subject property and concluded that the proposed use was of the type called for in the plan and was in conformance with the plan.

In response to Floyd's contention that extension of the Nash development beyond the plan map's 1,500-foot line east of Route 3 shows conclusively that the proposed development does not conform, Mr. Yoder pointed out that every plan goal which this demarcation might promote was addressed in the basic plan, so that the 1,500-foot limitation by itself had no meaning in the case. The expert offered a detailed and specific analysis of the 1,500-foot limitation which is included in full in the record.

Prince George's County Code, § 27-591 (b) (1) requires that:

The proposed plan for development of the Comprehensive Design Zone conforms to an approved

General Plan map, Area Master Plan map, or an urban renewal plan map *or is in conformity with the principles described in such plans* in relation to land use, number of dwelling units and intensity of nonresidential buildings, and location. (Emphasis supplied).

As the emphasized language indicates, an applicant could fail to comply with *any* adopted map and still satisfy the standard by conforming with the "principles" in these plans, since the requirement is stated in the alternative.

The provisions of § 27-591 (b) must be read as flexible standards, so that a large measure of discretion is left with the District Council when reviewing a Comprehensive Design Zone application.

First, the language of the section states specifically that the standards are to be met "to the satisfaction of the District Council." It appears that the Council's intention in enacting the Comprehensive Design Zone provisions was that it have the freedom to decide, partly as policy questions, whether the standards are satisfied.

A review of the standards themselves indicates that they do not admit of precise definition and depend in large part on adopted County plans and policies. The standards are not like height or setback requirements, where compliance, or lack thereof, is readily discernible.

Comprehensive Design Zones are considered "floating zones." *See, e.g., Aubinoe v. Lewis,* 250 Md. 645, 244 A.2d 879, 883 (1968); Pr. Geo. Co. Code, § 596.1. In reviewing floating zones, the courts have specifically applied the fairly debatable standard to actions taken by the legislative body. *See, Kanfer v. Montgomery County Council,* 35 Md. App. 715, 373 A.2d 5, 12, *cert. denied,* 281 Md. 741 (1977). Reviewing courts must not substitute their judgment for that of the zoning agency and must affirm any decision which is supported by substantial evidence and therefore fairly debatable. In *Prince George's County v. Meinenger,* 264 Md. 148, 152, 285 A.2d 649, 651 (1972), it was explained

that "substantial evidence" means a little more than a "scintilla of evidence," and in *Eger v. Stone,* 253 Md. 533, 542, 253 A.2d 372, 377 (1969), the "fairly debatable" standard was defined as follows:

> We have made it quite clear that if the issue before the administrative body is "fairly debatable," that is, that its determination involved testimony from which a reasonable man could come to different conclusions, the courts will not substitute their judgment for that of the administrative body. . . .

Courts in Maryland tend to defer to zoning agencies because of their presumed "expertise," *Brouillet v. Eudowood Shopping Plaza, Inc.,* 249 Md. 606, 608, 241 A.2d 404, 405 (1968), and because it is thought best to allow the agency, rather than the reviewing court, to exercise the "discretion" to grant or deny an application, *B.P. Oil, Inc. v. County Board of Appeals,* 42 Md. App. 576, 577, 401 A.2d 1054, 1055 (1979).

This floating zone case is to be judged by the same "substantial evidence" and "fairly debatable" standards as apply in zoning cases generally. *E.g., Schultz v. Pritts,* 291 Md. 1, 432 A.2d 1319 (1981) (special exception); *Stratakis v. Beauchamp,* 268 Md. 643, 304 A.2d 244 (1973) (rezoning and special exception); *Aubinoe v. Lewis, supra,* 244 A.2d at 883; Pr. Geo. Co. Code, § 596.1.

The controlling factor here is whether the Council could find that the Master Plan was only a guide and that the 1,500-foot limitation was adopted as a guideline and not as a mandatory requirement. If the Council were bound by the express provision that only 1,500 feet could be used for conditional employment along Crain Highway, then the finding of substantial compliance might well be found to be arbitrary and contrary to the Master Plan.

However, it is commonly understood, in Maryland and elsewhere, that Master Plans are guides in the zoning process. *Chapman v. Montgomery County Council,* 259 Md. 641, 271 A.2d 156 (1970); *Board of County Comm'rs. for Prince*

*George's County v. Edmonds,* 240 Md. 680, 215 A.2d 209 (1965); *see Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 376 A.2d 483, *cert. denied,* 434 U.S. 1067 (1977) (Master Plan a guide, not a straitjacket); *Kanfer v. Montgomery County Council, supra* (plan a "prophecy" as to future development). Master Plan guidelines are mandatory only if an ordinance so provides. *Cf. Coffey v. Md.-Nat'l. Cap. Park & Pl. Comm'n.,* 293 Md. 24, 441 A.2d 1041 (1982) (subdivision case); *Board of County Comm'rs. of Cecil County v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979).

The essential test in this floating-zone case is compatibility, clearly a matter of judgment which should be reserved to the District Council. The cases, starting with *Huff v. Board of Zoning Appeals of Baltimore County,* 214 Md. 48, 133 A.2d 83 (1957), and the Prince George's County Ordinance, in § 27-591 (b) (6), provide that a showing of compatibility is a primary requirement. This showing replaces the usual proof of change or mistake, *see Aubinoe v. Lewis, supra* (change-mistake rule not applicable in floating-zone cases); *cf. Stratakis v. Beauchamp, supra,* (piecemeal rezoning case); and the requirement likens a floating zone case to a special exception case, *see Fitzgerald v. Montgomery County,* 37 Md. App. 148, 376 A.2d 1125, *cert. denied,* 281 Md. 737 (1977); *Kanfer v. Montgomery County Council, supra.* Floating zone applications have been reviewed in Prince George's County for years. *See Kramer v. Board of County Comm'rs. for Prince George's County,* 248 Md. 27, 234 A.2d 589 (1967). The zoning agency in a floating zone case must find, just as it does in a special exception case, that compatibility is shown by the applicant's conformance to express ordinance standards. *See Bigenho v. Montgomery County Council,* 248 Md. 386, 237 A.2d 53 (1968); *Bujno v. Montgomery County Council,* 243 Md. 110, 220 A.2d 126 (1966); *Beall v. Montgomery County Council,* 240 Md. 77, 212 A.2d 751 (1965).

Further, as indicated by Mr. Yoder's testimony above, compliance with the 1,500-foot demarcation provided by the Master Plan would be absurd and impossible.

Where, as here, substantial compliance is shown by an extensive evidentiary presentation, every ordinance requirement was met; and the District Council's approval was granted subject to ten conditions, which addressed every substantial concern revealed in the record, this Court cannot hold that the Council's approval of the Nash rezoning was arbitrary or unlawful. Reading and applying the law and the record reasonably, and giving deference to the judgment of the District Council, this Court must affirm the decision of the Circuit Court.

*Judgment affirmed, costs to be paid by appellants.*