675 A.2d 148

**Charles F. COLAO, et al.**

v.

**COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY,
Maryland, Sitting as the District Council, et al.**

**No. 1227, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

April 4, 1996.

Reconsideration Denied May 28, 1996.

**432**

434

Thomas E. Dernoga (Skullney, Gray & Dernoga on the brief), Laurel, for appellants.

Joyce B. Nichols, Upper Marlboro, for appellee, District Council.

Ellis J. Koch, Potomac (William E. Knight, Upper Marlboro, on the brief), for appellee, Northpeak–Racetrack.

Argued before BISHOP, WENNER, and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from an order of the Circuit Court for Prince George's County affirming decisions of the County Council for Prince George's County, sitting as the District Council (Council), that, in separately enacted ordinances, approved two rezoning applications—A–9900 and A–9901. Six questions are presented on this appeal, the first of which is a threshold jurisdictional question. We restate (and rearrange the order of) these questions as follows:

I. Did the circuit court err in entertaining the appeal of the Council's approval of rezoning application A–9900?

II. Did the circuit court err in determining that the Council sufficiently articulated its findings of fact and conclusions of law?

III. Did the circuit court err in determining that the Council's approvals of the rezoning applications were supported by substantial evidence?

IV. Did the circuit court err in denying appellants' motion to supplement the record with a transcript of the oral argument before the Council?

V. Did the circuit court err in determining that the Council was not required to remand the case for failure of the administrative file to contain certain documents?

VI. Did the circuit court err in determining that the Council was not required to remand the case upon the amendment of rezoning application A–9900?

## FACTS

This case involves two separate rezoning applications, which the Council ultimately approved through enactment of separate zoning ordinances. In October 1993, appellee North-

peak–Racetrack Limited Partnership (Northpeak) filed two applications to rezone certain parcels of land situated northwest of Bowie, Maryland in Prince George's County, in furtherance of its plan to build a townhouse development and retail center in the area. By the first rezoning application (A–9900), Northpeak requested that two parcels of land be rezoned from R–R (Rural–Residential) and R–A (Rural–Agricultural) zoning to R–S (Residential–Suburban) zoning. These two parcels—the northern parcel and the southern parcel—are separated by Route 197 and total approximately 95.84 acres. By the second rezoning application (A–9901), appellee Northpeak requested that four acres of land located adjacent to the southern parcel be rezoned from R–R zoning to L–A–C (Local Activity Center) zoning for a retail center. The subject property is located within the approved Bowie–Collington–Mitchellville and Vicinity Master Plan (master plan). Appellants oppose each of Northpeak's rezoning applications. Appellants are Charles F. Colao, Alexander Senecal, Nancy Engelman, and the Berwyn Rod & Gun Club, Inc.

Northpeak asserts that its rezoning requests are in conformity with the recommendations of the master plan. The applications recite that the master plan recommends that R–A zoning be retained for the northern parcel and that the southern parcel be rezoned to R–S zoning for development at a density of 1.6 to 2.6 dwelling units per acre. Northpeak desired to rezone the northern parcel to the R–S zone, and then—rather than develop the northern parcel—transfer the dwelling unit per-acre density from the northern parcel to the southern parcel, thereby increasing the maximum number of units in the southern parcel as set forth in the master plan. In exchange for this density transfer, Northpeak offered the undeveloped and newly rezoned R–S northern parcel for use as a park. According to Northpeak, this parkland dedication is consistent with the master plan's suggestion that a thirty-acre park be located in the vicinity of the northern parcel, and that the density transfer is consistent with the master plan's goal for increasing housing opportunities in the area.

Northpeak also proposed a convenience center for the four-acre parcel that would span 15,000 to 25,000 square feet of gross floor area. This, according to Northpeak, is consistent with the recommendations of the master plan (which suggests that a developer could submit a rezoning application to construct a convenience center occupying a maximum of 15,000 square feet of gross floor area). Northpeak's market study purportedly justifies the floor area increase.

Under the Prince George's County Code, the R–S zone and the L–A–C zone are "Comprehensive Design Zones." See PRINCE GEORGE'S COUNTY CODE §§ 27–179 to 27–198 (1991). Accordingly, Northpeak's rezoning applications are considered comprehensive design zone applications. As a result, many different public offices in Prince George's County held hearings, reviewed each rezoning application, and issued recommendations thereon.[1] The Bowie City Council, after a series of public hearings, issued a letter dated March 1, 1994 to John W. Rhoads, the chairman of the Prince George's County Planning Board, reflecting the Bowie City Council's recommendations.[2] The letter stated that the Bowie City Council voted to recommend that A–9900 be denied because the northern parcel was included in the R–S rezoning request.

---

1. For a good discussion of the administrative procedure pertaining to the process of comprehensive design zone application approval in Prince George's County, see *Coscan Washington, Inc. v. Md.–National Capital*, 87 Md.App. 602, 608–09, 590 A.2d 1080, *cert. denied*, 324 Md. 324, 597 A.2d 421 (1991); *Rodriguez v. Prince George's County*, 79 Md.App. 537, 558 A.2d 742, *cert. denied*, 317 Md. 641, 566 A.2d 101 (1989); *Floyd v. County Council of Prince George's County*, 55 Md.App. 246, 461 A.2d 76 (1983). Comprehensive design zones are also referred to as "floating zones." *Floyd*, 55 Md.App. at 257, 461 A.2d 76.

2. Prior to the issuance of this letter, the City Manager of Bowie issued three memoranda (dated January 14, 1994, February 11, 1994, and February 25, 1994) to the City Council of Bowie. In the January memorandum, the City Manager set forth his recommendations regarding A–9900 and A–9901. The City Manager's position was essentially adopted by the City Council. In the February 11 memorandum, issued as a result of several areas of concern raised by the City Council, the City Manager reiterated his original position, with some added considerations. The parties refer to these memoranda as the Bowie Staff Reports.

According to the letter, however, the Bowie City Council voted to approve A–9900 for R–S rezoning of the southern tract at a density of 1.6 to 2.6 units per acre, subject to five conditions, provided that the northern parcel was excluded from the R–S rezoning request. With respect to A–9901, the Bowie City Council recommended that the L–A–C rezoning be granted subject to a 15,000 square foot limitation, with residential density permitted as set forth in the master plan.

The Technical Staff of the Maryland–National Capital Park and Planning Commission (MNCPPC) issued a report dated February 1, 1994 to the Prince George's County Planning Board of the MNCPPC and to the Council, recommending approval of the rezoning and of the dwelling unit density transfer from the northern to the southern parcel for a maximum 200 dwelling units. The Technical Staff's approval of A–9900 was subject to eleven conditions dealing with such matters as traffic and environmental issues. The Technical Staff also recommended approval of A–9901 for 15,000 square feet of retail use on two acres and residential use on the remaining two acres with a maximum of twenty dwelling units. In addition, the Prince George's County Planning Board of the MNCPPC conducted a hearing on March 10, 1994 and issued two resolutions (one for A–9900 and one for A–9901) four days later, recommending to the Council approval of the applications based on the Technical Staff's analysis.

The Zoning Hearing Examiner (ZHE) of Prince George's County conducted hearings on March 2, 17, and 21, 1994. On March 29, 1994, the ZHE issued a written decision regarding applications A–9900 and A–9901. Therein, with respect to A–9900, the ZHE recommended to the Council denial of the northern parcel rezoning request and approval of R–S rezoning for the southern parcel (with a dwelling unit density of 1.6 to 2.6 per acre), without a dwelling unit density transfer. With respect to A–9901, the ZHE recommended approval of L–A–C rezoning for the four-acre parcel with 15,000 square feet of commercial floor space and with sixteen to twenty-four units of residential use. Other facts pertaining to the ZHE hearing and decision will be explained more fully below.

The Council conducted oral argument on May 18, 1994. On June 22, 1994, the Council issued notices that it had enacted a series of zoning ordinances disposing of Northpeak's rezoning applications. In the ordinances pertaining to A–9900, the Council adopted the recommendations of the ZHE, subject to various conditions and considerations regarding issues of traffic, environment, and topography. Similarly, in separately enacted ordinances pertaining to A–9901, the Council adopted the ZHE's recommendations, subject to certain conditions concerning, among other things, safety and transportation.

In response to the Council's approvals, appellants filed a Petition for Review on July 22, 1994 with the circuit court. Below the caption, in the text of the petition, the petition requests judicial review of the Council's approval of application A–9901. Appellants' petition, however, does not state that appellants are also appealing from the Council's rezoning approval of A–9900, nor does it refer to that rezoning approval. Appellants assert that they intended to appeal from the approval of A–9901 *and* A–9900 but, because of a clerical error, they inadvertently failed to refer to A–9900.

On August 1, 1994, in response to appellants' petition for judicial review, the Council issued a "Notice of Filing of Petition for Judicial Review" to all parties to the proceeding pursuant to MARYLAND RULE 7–202(d). This notice announced that appellants had filed a petition for judicial review of the Council's approval of application A–9901, and that any party wishing to oppose the petition must file a response within thirty days after the date of the mailing of the notice. No mention is made of A–9900.

On October 18, 1994, nearly ninety days after the filing of the petition for judicial review, appellants filed with the circuit court a "Motion to Correct Petition and Record" (motion to correct) to amend the petition to reflect that appellants were also appealing from the approval of A–9900. Therein, appellants argued that the failure to refer to A–9900 was a clerical error, that they fully intended to appeal from the approval of

A–9900, and that appellees suffered no prejudice from appellants' clerical error.

Also on October 18, 1994, appellants filed a "Motion to Include Transcript in the Record and Petition to Show Cause" (transcript motion). Therein, appellants argued that, during the May 18, 1994 oral argument, the Council committed procedural errors and the Chairman of the Council exhibited personal bias against appellants' counsel (discussed below), which resulted in an unfair hearing in violation of due process. Appellants, therefore, requested that the circuit court order the transcript from the May 18, 1994 oral argument included in the record so that the circuit court could fully consider the issues regarding the Council's alleged improper actions. In the alternative, appellants requested a show cause order to have the appeals remanded to the Council for inclusion of the transcripts in the record.[3]

On December 23, 1994, the circuit court conducted a hearing on these motions. The circuit court, from the bench, granted the motion to correct, but denied the transcript motion. With respect to the motion to correct, commenting that it was a "very close issue," the circuit court determined that the failure to refer to A–9900 resulted from a clerical mistake, that there was substantial compliance with the rules, and that no prejudice to appellees resulted. With respect to the transcript motion, the circuit court ruled that its task was to review the evidence before the Council—not to review the transcript of the oral argument. Thus, the circuit court concluded that the alleged bias and prejudice against appellants were collateral to the substantive issue of the propriety of the Council's rezoning approvals.

On April 12, 1995, the circuit court heard oral argument on appellants' petition for review. Following argument, the circuit court issued its ruling from the bench, affirming the

---

**3.** In this Court, appellees filed a Motion to Strike in response to appellants' inclusion in their brief of documents that are not in the record, but that allegedly substantiate the allegations of personal bias and prejudice. We shall dispose of this motion below.

decisions of the Council. In so doing, the circuit court ruled that there was substantial evidence to support each rezoning decision.

Thereafter, appellants filed a timely appeal with this Court challenging the judgment of the circuit court.

## DISCUSSION

### I

■ As a threshold matter, appellees contend that the circuit court was without authority to review the Council's approval of A–9900 because of appellants' alleged failure to file a timely petition for review of A–9900 in compliance with MARYLAND RULE 7–203(a). In order to determine whether appellees are correct, we must examine the Maryland rules governing circuit court review of administrative decisions.[4]

### A

"The rules in this Chapter [MARYLAND RULE 7–201 to 7–210 (1996) ] govern actions for judicial review of *an order or action of an administrative agency*, where judicial review is authorized by statute."[5] MARYLAND RULE 7–201(a) (1996) (emphasis added). An "administrative agency" includes a "unit of . . . a

---

4. Preliminarily, we wish to dispel appellants' misunderstanding that this Court has already "rejected this argument." In their reply brief, appellants correctly point out that appellees raised the issue of lack of authority over A–9900 in appellees' Motion to Dismiss the instant appeal filed with this Court. On behalf of the panel that ruled on that motion, Chief Judge Wilner denied appellees' motion to dismiss, endorsing the motion as follows: "Denied by panel. Even if circuit court erred, this Court has jurisdiction to entertain the appeal." Thus, by denying the motion to dismiss, this Court merely ruled that it had jurisdiction to consider whether the circuit court had authority to entertain the appeal from the approval of A–9900. Our denial of the motion to dismiss, therefore, cannot be construed as a determination of this issue.

5. Judicial review of the Council's decisions approving Northpeak's rezoning applications is authorized under MD.ANN.CODE art. 28, § 8–106(e) (1995).

political subdivision of the State." *Id.* at 7–201(b). Rule 7–203 governs the time for which a petition for judicial review of an agency decision must be filed in circuit court. That rule provides:

> Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:
>
> (1) the date of the order or action of which review is sought;
>
> (2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or
>
> (3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

This rule is derived from former Rule B4. *See* notes following MD.RULE 7–203 (1996). *See also* ONE HUNDRED TWENTY-SECOND REPORT OF THE STANDING COMMITTEE ON RULES OF PRACTICE & PROCEDURE, Vol. 19, Issue 26 of Md.Reg. 2278 (Dec. 23, 1992). Former Rule B4.a. provided that "[a]n order for appeal shall be filed within thirty days from the date of the action appealed from . . . ." MD.RULE B4.a. (1993). In addition, subsections b through e of that rule contained provisions for extending or reducing the time for filing an appeal from an administrative decision. *Id.* at B4.b.–e. Significantly, former Rule B5 provided:

> If the appellant shall fail to file his order for appeal within the time prescribed by Rule B4 (Time for Filing) or any order issued pursuant thereto . . . the court shall dismiss the appeal *unless cause to the contrary be shown.*

(Emphasis added).

On March 30, 1993, Rules B1 to B13 were rescinded effective July 1, 1993. MD.RULE B1 to B13 (1994). Rule 7–203, as presently codified, first appeared in the 1994 version of the MARYLAND RULES. Neither the "cause" aspect of Rule B5, nor the provisions for extending or shortening time, survived the 1993 rules change, and are noticeably absent from the present

rules. Because the time for initiating an action for review is viewed as a statute of limitations, the good cause exception was omitted from the present codification. *See* Committee notes following MD.RULE 7–203 (1996).[6]

■ It is clear, therefore, that discretion has been removed from the circuit court with respect to untimely filed petitions for judicial review of agency decisions. Accordingly, the petition must be filed within the thirty-day filing period in order for the circuit court to have authority to hear the appeal.[7] In this regard, MD.RULE 7–203 operates in a similar manner as MD.RULE 8–202(a), with respect to appeals to this Court. *See Houghton v. County Comm'rs of Kent County*, 305 Md. 407, 413, 504 A.2d 1145 (1986) ("if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed."); *Maxwell v. Ingerman*, 107 Md. App. 677, 678, 670 A.2d 959 (1996); *Blackstone v. State*, 6 Md.App. 404, 406, 251 A.2d 255 (1969) (The Maryland Rules do not contain a provision authorizing an extension of the thirty-day notice of appeal period from the circuit court to this Court).

---

6. The Committee note following MD.RULE 7–203 states:

 The provisions of former Rule B4 concerning the shortening and extending of time are not carried forward. The time for initiating an action for judicial review is in the nature of a statute of limitations, which must be specifically raised either by preliminary motion under Rule 7–204 or in the answering memorandum filed pursuant to Rule 7–207.

7. Although the parties do not address it on this appeal, we observe that MD.ANN.CODE art. 28, § 8–106(e) (1995) provides:

 In Prince George's County ... any person ... affected by a final district council decision, and, if aggrieved, the applicant may have judicial review of any final decision of the district council. Proceedings for review shall be instituted by filing a petition in the Circuit Court of Prince George's County within 30 days after service of the final decision of the district council....

 Even though the parties do not mention this provision, we see no reason why the thirty-day period for filing appeals set forth therein should operate differently from the thirty-day period provided in Rule 7–203.

■ The principle that the thirty-day period under Rule 7–203 is now considered in the nature of a statute of limitations, the extension of which is no longer possible for good cause, must not be confused with another important principle: mere technical defects respecting the petition for review will not cause an appeal from an administrative agency to be dismissed if the petitioner has otherwise substantially complied with the procedural rules and there is no prejudice to the respondent. This principle was explained in *Town of Somerset v. Montgomery County Bd. of Appeals*, 245 Md. 52, 60, 225 A.2d 294 (1966), where a timely-filed petition of appeal from the agency decision did not expressly allege that petitioners were persons aggrieved by the agency's order. *See* MD.RULE 7–202(c) (1996) (The petition for judicial review shall "state whether the petitioner was a party to the agency proceeding."). The Court of Appeals recognized that "[w]here there is compliance with the substance of the requirements of statutes or rules and the other parties have not been prejudiced, technical irregularities cannot be made the basis for depriving persons of the opportunity to assert their legal rights." *Town of Somerset*, 245 Md. at 61, 225 A.2d 294. The Court, therefore, held that the petitioners' failure to allege expressly in their petition that they were aggrieved parties merely was a technical irregularity. *Id.*

A similar result was reached in *Border v. Grooms*, 267 Md. 100, 103–05, 297 A.2d 81 (1972). In that case, petitioners had technically violated MD.RULE B2.e; instead of serving a copy of the petition "on the agency," as required by the rule, petitioners had served the copy of the petition on counsel for the agency. Before determining whether the circuit court properly entertained the appeal, the Court comprehensively discussed Maryland case law on the subject:

> In *Volk v. Pugatch*, 262 Md. 80, 277 A.2d 17 (1971), we approved the granting of a motion to dismiss where the appellant completely failed to file the petition of appeal required by Rule B2.e and also failed to transmit the record and testimony, as required by Rule B7.a. In *Salisbury Board of Zoning Appeals v. Bounds*, 240 Md. 547, 214 A.2d

810 (1965), we reversed the lower court's ruling refusing to dismiss an appeal where the appellants failed to file a petition of appeal setting forth the error committed by the agency until thirty days beyond the time prescribed for such filing by Rule B2.e. Both *Volk* and *Bounds* involved failure to file a petition of appeal complying with the requirements of Rule B2.e; in each case, we noted that the Rule did not require a showing of prejudice to the adverse party as a prerequisite to dismissal of the appeal. In *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A.2d 294 (1966), the petition was timely filed but failed to expressly allege that appellants were persons aggrieved by the Board's order. We there held, in refusing to approve a dismissal of the appeal, that "[w]here there is compliance with the substance of the requirements of statutes or rules and the other parties have not been prejudiced, technical irregularities cannot be made the basis for depriving persons of the opportunity to assert their legal rights." 245 Md. at 61, 225 A.2d at 299–300. In *Board of County Commissioners v. Kines,* 239 Md. 119, 210 A.2d 367 (1965), it was claimed that the appeal was subject to dismissal because a copy of the *order* of appeal had not been served on the agency prior to its filing with the Clerk of the lower court, as required by Rule B2.c. After noting that the agency received a copy of the *petition* of appeal before the expiration of the time for appeal, and therefore had "full and timely notice" that its action was sought to be overturned, we ruled that there was "substantial compliance with the appeal procedures." 239 Md. at 125, 210 A.2d at 371.

*Id.* at 105–06. Following this discussion, the Court of Appeals held that petitioners did not fail to file a timely petition, but rather only committed a technical error akin to the error in *Town of Somerset,* and that, in light of the fact that they otherwise substantially complied with the rule and no prejudice resulted to the respondents, the appeal was properly entertained. *Id.* at 106–07, 297 A.2d 81.

It is important to note that *Town of Somerset* and *Grooms* (and the cases discussed in *Grooms*) dealt with technical deviations from former Rule B2, the predecessor to current Rule 7–202. Former Rule B2 and current Rule 7–202 dictate the method for securing judicial review of an agency order, and set forth technical procedural requirements related to the petition for review, such as, service of copies of the petition on the agency and the contents of the petition. Although Rule 7–202 is very similar to Rule B2, it nonetheless underwent some significant changes. For example, the new rule specifically sets forth a caption that shall be used in a petition for review. MD.RULE 7–202(b). Additionally, the old rule's requirement of filing an initial "order for appeal" followed by a separate "petition" of appeal, MD.RULE B2.e (1993), is replaced with the requirement that only a single "petition for judicial review" need be filed to secure an appeal. MD.RULE 7–202(a) (1996). In light of these changes, it could be argued that the aforementioned cases decided under former Rule B2 may no longer be strictly binding authority today. Because of the similarity between the old and the new rules, however, we view these cases as highly persuasive—if not binding—authority with respect to departures from present Rule 7–202.

Understanding the fundamental difference between (1) the nature of Rule 7–203's thirty-day filing period, which may be likened to a statute of limitations, on the one hand, and (2) the principle relating to Rule 7–202 that mere technical irregularities with respect to a petition for review will be excused when the petitioner has otherwise substantially complied with the procedural rules and there is no prejudice to the respondent, on the other hand, is necessary for a firm understanding of the parties' arguments with respect to whether the circuit court properly entertained a review of the Council's approval of A–9900.

In the instant case, there is no question that appellants filed a timely petition for review from the Council's approval of A–9901. The critical issue, however, is whether that petition was sufficient to entitle appellants to appeal from the Council's approval of A–9900 also. The parties, of course, hold two very

different views regarding the effect and nature of the petition that appellants timely filed.

Under appellants' view, "a timely appeal had been filed [from the Council's approval of A–9900], but ... it contained a clerical error which did not prejudice Appellee Northpeak." Thus, appellants assert that they cannot be deprived of their opportunity to seek judicial review of A–9900 as a result of a technical irregularity, because they otherwise substantially complied with the rules and appellees allegedly were not prejudiced by the technical defect. In support of this contention, appellants rely primarily on the *Town of Somerset* line of cases.

On the other hand, under appellees' view, a petition for review from the Council's approval of A–9900 was never filed—the petition that appellants actually filed being a facially non-defective and complete petition effectively preserving an appeal only from the approval of A–9901. Asserting that a petition from A–9901 was never filed, appellees cite *Francois v. Alberti Van & Storage Co.,* 285 Md. 663, 404 A.2d 1058 (1979), as supportive of their position that the circuit court erred in reviewing the approval of A–9900. In *Francois,* the petitioner violated Rule B2.e. by filing its petition for review more than ten days after the date of filing the order for appeal. *Id.* at 666, 404 A.2d 1058 (Rule B2.e. provided that "[t]he appellant shall join with his order for appeal, or shall file with the clerk of the court, within ten days after filing the order, a petition setting forth the action appealed from ...."). The Court, citing *Town of Somerset* and *Grooms,* stated that it had "allowed an appeal to proceed on the ground that there had been substantial, if not literal, compliance with Rule B2.e on two occasions, where there were minor technical irregularities in the petition or the manner of its filing." *Id.* at 667, 404 A.2d 1058. The Court distinguished those cases from the facts in *Francois,* however, stating that " 'substantial compliance,' given its most liberal construction, denotes at least the timely filing of the document particularly required by Rule B2.e." *Id.* at 668, 404 A.2d 1058. Thus, the Court held that, since the petitioner did not file a petition within the time

required by Rule B2.e, the petitioner failed to preserve its appeal. *Id.* In so doing, the Court stated:

> We cannot countenance a party's substituting methods of his choice for established rules for perfecting appeals. Accordingly, we hold that [petitioner] failed to comply with the requirements of Rule B2.e.

*Id.*[8]

Appellees argue that if their interpretation of the situation is correct, the circuit court lacked authority to review the A–9900 approval, despite the fact that appellants' failure to refer to A–9900 resulted from an honest clerical error and caused no prejudice to appellees, because there are no exceptions to the thirty-day limitations period provided in the current rule. This is indeed the result, under the foregoing legal principles, if appellees are correct.

We now turn to the resolution of this issue.

## B

We agree with appellees that the appeal from the Council's approval of A–9900 was not preserved. We are of the opinion that a petition for review was not timely filed with respect to that appeal. Stated differently, the failure to file a separate petition for A–9900 (or, alternatively, to at least reference A–9900 in the timely-filed petition) was not a mere "technical" irregularity under the *Town of Somerset* line of cases, even

---

**8.** Appellants, however, argue that *Francois* actually supports their position. In this regard, appellants assert that the instant case is distinguishable from *Francois* because in the instant case a petition was timely filed, whereas in *Francois* a petition was not timely filed. Similarly, appellees contend that *Town of Somerset* really supports their position—not appellants' position. Appellees point out that *Town of Somerset* recognized the legal difference between cases in which a technically irregular petition is timely filed (as in *Somerset*), and cases in which there was no timely filing (as allegedly in the instant case). *Town of Somerset*, 245 Md. at 60, 225 A.2d 294. In this light, appellants are not far off base when they state that the question to be resolved is "whether the present case should fall under *Town of Somerset* or *Francois*."

though it may have resulted from a clerical error. We explain.

 We hold that appellants were required to file a separate petition for A–9900 or were at least required to state in their timely-filed petition that they were also seeking review of the approval of A–9900, because the Council's approval of A–9900 and its approval of A–9901 cannot be considered one appealable "order or action of an administrative agency," MARYLAND RULE 7–201(a) (1996), from which judicial review may be sought. Rather, the Council's decision to approve A–9900 was a distinct "order or action of an administrative agency," apart from its decision to approve A–9901. The record unquestionably bears this out.

A–9900 and A–9901 were two separate rezoning applications. To be sure, rezoning applications A–9900 and A–9901 procedurally travelled together and were contemporaneously examined by the various public bodies as companion applications. This would be expected, since both applications were a part of Northpeak's overall development plan for the area. Indeed, throughout this case, appellees sought approval of, and appellants opposed, both applications simultaneously. This, however, does not change the fact that the Council's action approving A–9900 was "an order or action of an administrative agency" that was administratively distinct from its action approving A–9901.

Appellant must not lose sight of the fact that application A–9900 and application A–9901 were two separate rezoning applications, for different (albeit proximate) parcels of land, and for very different zoning and development purposes. A–9900 dealt with rezoning for a housing development and A–9901 primarily dealt with rezoning for a commercial center. Although the various governmental offices may have handled both applications contemporaneously, the written reports and recommendations from these offices clearly demonstrate that A–9900 was considered as a separate rezoning request from A–9901. Indeed, the record contains a single red-well file

folder for materials pertaining to A–9901, and two red-well file folders for materials pertaining to A–9900.

Most important, the Council enacted two sets of zoning ordinances—one covering A–9900 and one covering A–9901. In other words, the Council did not approve both applications in the same zoning ordinance, but treated each application as independent, requiring separate legislative action. Moreover, A–9900 and A–9901 were never formally consolidated into one matter. We recognize that the ZHE proceeded *"as though* [both applications] were joint cases," and that many of the evidentiary exhibits and much of the testimony were applicable to both applications. (Emphasis supplied). The conduct of the ZHE in handling the applications, however, cannot erase or trump the Council's separate administrative treatment of each application. After all, it is the Council, and not the ZHE, that is the final agency decision maker, and, in this case, the Council took separate administrative action for each application. That both may have been dealt with as companion applications was clearly for purposes of administrative convenience, and not because they were viewed as a single rezoning application necessitating only one enactment.

All of this stated, we have no doubt that appellees intended to appeal from both decisions of the Council. Unintentional clerical mistakes do, of course, happen, and we empathize with appellants in this regard. In this case, however, the innocent clerical mistake led to a real substantive flaw, as opposed to a mere technical irregularity. Stated differently, this clerical mistake did not cause the filed petition to become technically irregular. Indeed, the filed petition, on its face, is technically sufficient under Rule 7–202—with one minor exception that we shall discuss below.

In this regard, the filed petition states that appellants "were parties to the proceedings before the District Council on this matter," in compliance with Rule 7–202(c) (the petition shall "state whether the petitioner was a party to the agency proceeding."). Additionally, the filed petition states that appellants are "requesting judicial review," also in compliance

with Rule 7–202(c) (the "petition shall request judicial review"). Furthermore, the filed petition identifies the decision of the Council in the case of A–9901. *See* MD.RULE 7–202(c) ("The petition shall . . . identify the order or action of which review is sought. . . .").

■ Somewhat ironically, the caption of the filed petition contains a defect that, if relied upon by appellees as a basis for dismissal of the A–9901 appeal, we would deem to be a mere technical irregularity under the *Town of Somerset* line of cases. As previously noted, Rule 7–202(b) sets forth a caption to be employed in the petition for review, which requires the petitioner to reference the "agency case number." The caption of appellants' filed petition for review, however, fails to indicate the "agency case number." In our opinion, in the circumstances of this case where omission caused no problem to the agency or prejudice to anyone, a mere technical irregularity in the petition should be excused because appellants substantially complied in every other respect with the rules.

Thus, apart from a minor violation of the caption provision in Rule 7–202(b), appellants' petition for review is flawless. Because it is not defective in any material way, we do not consider it to be a technically irregular petition for review. Rather, it is a complete and effective petition for review of the approval of A–9901. This, coupled with our holding that the Council's approval of A–9900 was a separate appealable "order or action of an administrative agency," leads us to conclude that the circuit court was without authority to provide a remedy because no petition for review from that decision was filed.

Based on the foregoing, therefore, we reverse the circuit court's determination that it had authority to review the Council's approval of A–9900. As a result, the remainder of our opinion only deals with issues relating to A–9901.

## II

Because they are related, we shall address together the second and third questions presented by appellant. Those

questions require us to decide whether the circuit court erred in determining that the Council sufficiently articulated its findings of fact and conclusions of law in approving A–9901, and in determining that the approval of A–9901 was supported by substantial evidence. In disposing of these questions, we shall first present a few principles of law applicable to the issues.

## A

In resolving the second question, we must keep in mind the requirements related to the sufficiency of an agency's factual findings and legal conclusions. As we stated in our factual recitation, the Council adopted the ZHE's recommendation to approve A–9901.

Despite strong commentary from the Court of Appeals in *Montgomery v. Board of County Comm'rs,* 256 Md. 597, 603, 261 A.2d 447 (1970), disapproving of the Council's practice of adopting and incorporating as its own the findings and conclusions of others, the Council has evidently continued to do so. As long as the Council wishes to continue this practice, as we have previously held in a Prince George's County floating zone case, "it must at least make certain that the findings it proposes to adopt comply with the statutory requirements of specificity." *Rodriguez,* 79 Md.App. at 549, 558 A.2d 742 (citing MD.ANN.CODE art. 28, § 8–124 and PRINCE GEORGE'S COUNTY CODE §§ 27–195(b) & 27–499). This means that the adopted findings must be specific and the conclusions clearly articulated. *Id.* at 551, 558 A.2d 742. "It is not permissible for the Council, or any administrative body, simply to parrot general statutory requirements or rest on broad conclusory statements." *Id.* at 550, 558 A.2d 742.

Courts require specific findings and well-articulated conclusions because " 'citizens are entitled to something more than [a] boiler-plate resolution.' " *Id.* (quoting *Turner v. Hammond,* 270 Md. 41, 56, 310 A.2d 543 (1973)). *See Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772 (1991) (this requirement recognizes that a party to an administrative

proceeding is entitled to be apprised of the facts relied upon by the agency and permits meaningful judicial review of those findings). As the Court of Appeals recognized in a prior Montgomery County "floating zone" case,

> [i]t is vitally important that the District Council make appropriate *express findings* based on adequate evidence that the purposes set forth in the Ordinance for the R–H zone exist and that the project is compatible with the existing uses in the general neighborhood. We held in *Bujno v. Montgomery County Council*, 243 Md. 110, 220 A.2d 126 (1966), however, that in a proper case—arising before our decision in *Beall* [*v. Montgomery County Council*, 240 Md. 77 [212 A.2d 751] (1965) ]—we could *infer* that the necessary findings had been made by the District Council. In *Bujno*, the opinion of the District Council indicated the unique location of the site, the amount of lot coverage permitted in the R–H zone and most importantly that "there was expert testimony submitted by the applicant that the R–H zone is most suitable for this tract."

*Aubinoe v. Lewis*, 250 Md. 645, 653–54, 244 A.2d 879 (1968).

 Indeed, so important are well-reasoned and articulated administrative findings that a reviewing court may not uphold an agency's decision without them. *Mortimer v. Howard Research & Dev. Corp.*, 83 Md.App. 432, 441, 575 A.2d 750 (1990). This is because in the absence of reasoned administrative analysis a reviewing court is unable to determine the basis of the agency's action. *Id.* Thus, the agency's decision must be precise and clear enough to allow for meaningful appellate review. If the agency fails to meet this basic requirement, the decision is considered arbitrary and the case must be remanded for the purpose of correcting the deficiency. *Id.* at 441–42.

In the instant case, under PRINCE GEORGE'S COUNTY CODE § 27–195(b) (1991), before the Council may approve a rezoning application, the applicant must demonstrate to the Council's satisfaction that the entire development meets certain statutory criteria, which we restate and summarize as follows:

1. The proposed Basic Plan shall conform either to the specific recommendation of a master plan map; or to the principles and guidelines contained in the master plan with respect to land use, number of dwelling units, etc;

2. the economic analysis submitted for a proposed retail commercial area must adequately justify an area of the size and scope shown on the Basic Plan;

3. transportation facilities (e.g., streets and public transit) will be adequate to support anticipated traffic, and the uses proposed will not generate traffic that will lower the level of service anticipated;

4. other facilities, such as schools, recreation areas, water and sewerage systems, libraries, and fire stations, will be adequate to support the proposed uses;

5. the proposed use will be compatible with the environment so as to promote the health, safety, and welfare of the present and future inhabitants of the Regional District;

6. where construction is anticipated to last for more than six years, public facilities must be adequate to serve the proposed development within the first six years; the Council must also find that adequate facilities probably will be provided for the remainder of the project; and

7. in the case of an L–A–C zone, the applicant, must show that any proposed commercial development is consistent with the master plan; or not larger than needed to serve existing and proposed residential development within the community or neighborhood.

*Id.* at § 27–195(b).

While both parties to the instant dispute acknowledge that § 27–195(b) must be satisfied before the rezoning application may be approved, the parties disagree as to whether the Council must also determine that the purposes of the proposed zone will be met under the County Code. Section § 27–494(a) of the Code states that the purposes of the L–A–C Zone are to:

(1) Establish (in the public interest) a plan implementation Zone, in which (among other things):

(A) Permissible residential density and building intensity are dependent on providing public benefit features and related density/intensity increment factors; and

(B) The location of the zone must be in accordance with the adopted and approved General Plan, Master Plan, or public urban renewal plan;

(2) Establish regulations through which adopted and approved public plans and policies (such as the General Plan, Master Plan, and public urban renewal plan for Community, Village, and Neighborhood Centers) can serve as the criteria for judging individual physical development proposals;

(3) Assure the compatibility of proposed land uses with existing and proposed surrounding land uses, and existing and proposed public facilities and services, so as to promote the health, safety and welfare of the present and future inhabitants of the Regional District;

(4) Encourage and stimulate balanced land development;

(5) Group uses serving public, quasi-public, and commercial needs together for the convenience of the populations they serve; and

(6) Encourage dwellings integrated with activity centers in a manner which retains the amenities of the residential environment and provides the convenience of proximity to an activity center.

*Id.* at § 27–494(a).

Appellants argue that the Council was required to make an express determination based on specific findings of fact and articulated legal conclusions, whether § 27–494(a) was satisfied before approving A–9901. In support of this contention, appellants cite *Aubinoe*, 250 Md. at 653–54, 244 A.2d 879, wherein the Court of Appeals determined that the Montgomery County District Council was required to make appropriate express findings that the purposes of a Montgomery County zoning ordinance (which, in a similar manner, set forth the purposes of the "R–H Zone") were met by the rezoning application.

Appellees, on the other hand, argue that the Council was not required to make an express determination that § 27–494(a) was satisfied. First, appellees point out that *Aubinoe* was a Montgomery County case based on the R–H zone. Second, appellees assert that § 27–494(a) is necessarily satisfied by the determination that § 27–195(b) is satisfied.

■■■ We agree with appellants. In addition to making the required express determination that § 27–195(b) is satisfied, the Council must also make an express determination that approving the application would satisfy the purposes of the L–A–C zone as set forth in § 27–494(a). *Aubinoe* is highly supportive of our view. Although that case was a Montgomery County zoning case, the principle, we are confident, is applicable here. Most significantly, in *Rodriguez*—a Prince George's County rezoning application case—we specifically held that the Council was required to make express findings under both § 27–195(b) *and* § 27–499, the latter of which sets forth the purposes of the E–I–A Zone. *Rodriguez*, 79 Md. App. at 540, 558 A.2d 742 ("Section 27–499 sets out a number of standards or conditions which a Basic Plan must meet to qualify the property for E–I–A zoning. They are supplemented by other standards or conditions specified in § 27–195. . . ."), & at 549–50. To be sure, both provisions share some common elements, e.g., master plan compatibility. We are of the opinion, however, that the ordinances supplement one another so as to require the Council to make separate express determinations under each provision. Of course, the Council may use the same evidence to support its conclusions under either statute.

Our first task, therefore, will be to determine whether, in approving A–9901, the Council made an express determination, based on sufficiently specific findings and well-reasoned conclusions, that Northpeak's application A–9901 satisfied the purposes for L–A–C zoning under § 27–494(a) and met the criteria set forth in § 27–195(b).

■■■ In addition to the principles related to the level of analysis required of an agency's decision, we shall set forth

the principles pertaining to our role as a reviewing court. As we stated in *Columbia Road Citizens' Assoc. v. Montgomery County*, 98 Md.App. 695, 698, 635 A.2d 30 (1994), there are two general standards of judicial review of a decision of a zoning agency:

> In regard to findings of fact, the trial court cannot substitute its judgment for that of the agency and must accept the agency's conclusions if they are based on substantial evidence and if reasoning minds could reach the same conclusion based on the record; when reviewing findings of law, however, no such deference is given to the agency's conclusion.

These principles equally pertain to floating zone cases. *See Floyd*, 55 Md.App. at 257–58, 461 A.2d 76 (in a floating zone case, a court reviewing a zoning agency's decision must affirm the decision where it is "fairly debatable," i.e., the decision is supported by substantial evidence). On this appeal, our role is to repeat the task of the circuit court, i.e., to determine whether the circuit court's review was correct. *Cox v. Prince George's County*, 86 Md.App. 179, 187, 586 A.2d 43 (1991).

 Thus, our job is not to zone or rezone, nor to substitute our judgment for that of the Council when the Council's action is based on substantial evidence. *Floyd*, 55 Md.App. at 255, 461 A.2d 76. Appellate courts, therefore, defer to zoning agencies because of their presumed expertise, and because zoning agencies—and not the courts—are better situated to exercise the discretion to grant or deny rezoning applications. *Id.* at 258, 461 A.2d 76.

## B

 We are of the opinion that the Council's decision approving A–9901 lacks specific findings of facts and sufficiently articulated conclusions of law. The Council's decision is deficient because the ZHE's decision—which the Council adopted as its own—is also deficient.

To understand fully why the ZHE's decision is insufficient, it will prove useful to provide an overview of the ZHE's

decision. The decision consists of thirty-five pages. From pages one to two, there is an introduction under the heading "Nature of Proceedings." Therein, the ZHE issued this notable disclaimer:

> An expedited decision is filed to meet deadlines required by the forthcoming legislative moratorium. Substantial use of the Bowie City Staff appraisals has been made because the MNCPPC Staff has not been privy to amendments made to the applicant's proposal. The City Staff's analysis is cumulative, running from the proposal as originally proposed to the final proposal made at the hearing. *Were the [ZHE] not confronted with the forthcoming deadline, this case would, most assuredly, have been referred back to Staff of the MNCPPC for further review and analysis. Your examiner will apologize up front, as while Staff's analysis is thorough, time has not permitted this decision to be presented in a cohesive, efficient manner.* However, your examiner is confident the recommendation herein is sound and supported by the record.

(Emphasis added).

Beginning at the second page, the ZHE sets forth his "Findings." This "Findings" section runs from page two to page thirty-one. At the beginning of this section, the ZHE describes the subject property and provides an overview of the proposed developments under A–9900 and A–9901. This initial overview ends at the fifth page of the decision. From the fifth page to the thirty-first page, the ZHE quotes verbatim from the various reports and recommendations issued by those public offices discussed above. In other words, in literal "cut and paste" fashion, the ZHE reproduced certain portions of (and in some cases entire) reports and recommendations issued by many of the various public agencies and offices that have reviewed the applications.

Also in this "cut and paste" section, the ZHE specifically stated that reliance could not be placed on a report from the Department of Parks and Recreation of the MNCPPC (which contained an evaluation of park needs), because the depart-

ment "evaluation of park needs ... included the southern part of the request in Master Plan Community III Living Area.... [and thus was] without further detailed analysis...." According to the ZHE, the subject property is located within Community *IV* of the master plan.

After "cutting and pasting" from those documents, the ZHE presented "Conclusions," starting on page thirty-one of the decision. The beginning of this section reads:

(1) Your Examiner adopts the above findings and conclusions found herein above as supportive of the recommendations below with additions that follow:

(a) While the Bowie Staff's paraphrasing of Section 27–195(a) is not the exact wording, your Examiner concludes the reasoning in the decision is supportive of approval conclusions under Section 27–195(b) as recommended below.

From pages thirty-two to thirty-four of the decision, the ZHE recommends approval of A–9900 with fifteen "conditions" and three "Considerations." From pages thirty-four to thirty-five, the ZHE recommends approval of A–9901 with six conditions.

The ZHE's decision fails to meet the standards of specificity in a number of respects. In the interest of time and judicial economy—and not by way of limitation—we shall address only the most glaring deficiencies. Preliminarily, as a global comment, the ZHE's prolific cutting and pasting, without any specific analysis of why the ZHE found those particular excerpts persuasive or significant, rendered the ZHE's decision very confusing and, in certain respects, contradictory. If the ZHE's decision independently contained reasoned analysis and sound fact-finding, it was lost in the aforementioned wholesale adoptions and incorporations. By his disclaimer, we can safely say that the ZHE recognized these fatal flaws.

Nonetheless, in the same manner that the Court of Appeals has recognized that it is acceptable for the Council to adopt as its own the findings and conclusions of others, we suppose that there is nothing inherently improper if the decision that the Council adopted, i.e., the ZHE's decision, in turn adopts and

incorporates reports and recommendations of other public offices—so long as the adopted findings and conclusions within each of those reports are sufficiently articulated, clear, and specific. In this case, the materials that the ZHE adopted and incorporated as his own do not contain sufficiently specific findings, nor do they contain the required articulated statutory analysis under §§ 27–195(b) and 27–494(a) for approval of A–9901.

Most obviously, there is no mention that the purposes of the L–A–C zone, as outlined in § 27–494(a), will be satisfied by approval of A–9901. None of the incorporated reports and recommendations indicate that this ordinance was even considered. For example, there is no articulated conclusion based on specific findings of fact that rezoning the four-acre parcel pursuant to A–9901 would "[e]ncourage and stimulate balanced land development." § 27–494(a)(4). Nor, for example, are we able to discern an expressed and reasoned conclusion based on sound fact-finding that rezoning the four-acre parcel would "[e]ncourage dwellings integrated with activity centers in a manner which retains the amenities of the residential environment and provides the convenience of proximity to an activity center." § 27–494(a)(6). Based on the foregoing legal discussion, we would be substituting our judgment for that of the Council were we to attempt to piece together the various excerpts and draw independent statutory conclusions therefrom. That stated, however, we do recognize that at least some of the various excerpts contained in the ZHE's decision sufficiently explain that the proposed commercial center is compatible with the master plan. Thus, we have no qualms with the manner in which that consideration was articulated.

The ZHE's decision is also deficient with respect to the required analysis under § 27–195(b). Again, the decision's analysis of master plan compatibility is satisfactory, but analysis of the other criteria listed in § 27–195(b) is, at best, hollow. For example, § 27–195(b)(1)(B) requires that the proposed retail center be justified by an economic analysis. An excerpt

from a Bowie Staff Report reproduced in (and adopted as part of) the ZHE's decision states:

> The Master Plan analyzed surplus/deficit commercial floor area throughout the planning area. Those statistics provided in the applicant's market study appear to be inconsistent with the Master Plan. The applicant should be prepared to revise the market study to include data which more accurately reflect[s] the findings of the Master Plan.
>
> Further, the report did not consider a day care center, contrary to the Master Plan encouraging such a use within the convenience center. The applicant should have incorporated the discussion and feasibility of a day care center in the report pursuant to the Master Plan recommendation.

Surprisingly, and without any explanation, the Bowie Staff Report concludes that the convenience center is supportable. Similarly, an adopted portion of a memorandum from the Community Planning Division of the Prince George's County Planning Department states that "a market study is required for the commercial component" and "should demonstrate a need for the proposed commercial center." These adopted comments clearly indicate a lack of economic justification. The ZHE, however, never explained why approval of A–9901 was warranted in light of the apparent deficiency with respect to Northpeak's market analysis. Curiously, an expert market analyst testified before the ZHE that the commercial center was economically justified, but the ZHE never relied upon, or even mentioned this testimony in the decision.

Another problem with the ZHE's decision is with respect to § 27–195(b)(1)(D), which requires the Council to analyze whether schools, among other public facilities, will be adequate for the uses proposed under A–9901. An adopted excerpt from a Bowie Staff Report reproduced in the ZHE's decision states that "all three schools are very close to enrollment capacity, and will most likely exceed capacity when this project reaches build-out." This comment unquestionably indicates a potential problem with school facility adequacy. Nevertheless, the ZHE adopted A–9901 without further analysis or explanation of this criteria. We recognize that the record

indicates that the proposed development under application A–9900 (not under A–9901) is most likely the largest threat to the adequacy of school facilities. This, however, does not excuse the Council from making the required school facility analysis for A–9901 (which included some dwelling units), approval of which, as we have held, is a separate agency action.

These examples demonstrate that the required analysis was not sufficiently expressed and articulated in the ZHE's decision. As a result, the Council's approval of A–9901 (which adopts as its own the ZHE's decision) is fatally flawed. The case, therefore, must be remanded to the Council to issue a decision that comports with the requirements for administrative decisions outlined above. We reiterate that the above examples do not represent the universe of problems with the ZHE's decision. Indeed, we could go on for some time describing the deficiencies in the Council's approval of A–9901.

■ We now dispose of the third question presented. From our review of the record, including certain expert testimony before the ZHE and various reports and memorandum from governmental offices, there appears to be substantial evidence to support the approval of A–9901 under the required statutory analysis set forth in §§ 27–195(b) and 27–494(a).[9] Given our role as a reviewing court, however, we may not substitute our judgment for that of the Council, assess the weight and credibility of that evidence, make specific findings of fact, and then draw and articulate conclusions of law therefrom. "A reviewing 'Court may not uphold the agency order unless it is sustainable *on the agency's findings and for the reasons stated by the agency.*'" *United Parcel Serv. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226 (1994) (quoting *United Steelworkers of America v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984))

---

**9.** There appears also to be substantial evidence supporting approval of A–9900.

(emphasis added). We disagree with appellees that *Aubinoe* authorizes us, nonetheless, to do so in this case.

Based on the foregoing, we reverse the circuit court's affirmance of the Council's approval of A–9901, and remand the case to the Council for further consideration consistent with the requirements above.

## III

The next question presented requires this Court to determine whether the circuit court erred in denying appellants' transcript motion. Appellants unsuccessfully petitioned the circuit court to include in the record the transcript from the oral argument before the Council, because, according to appellants, during the hearing before the Council, the personal bias of the Council's Chairman poisoned the hearing to the extent that the Council's approvals were rendered void.

In their transcript motion, appellants described this personal bias as follows:

In this case, the Chairman of the District Council has a personal bias against undersigned [appellants'] counsel with respect to matters unrelated to this case. Undersigned counsel and other clients have criticized the Chairman for his handling of land use matters. During the 1992 election campaign, undersigned counsel wrote a letter to the editor of the *Prince George's Journal* concerning the term limit question on the ballot. Counsel referred to the Chairman as a "poster-child" for term limits. The voters approved the question, amending the Charter and preventing the Chairman and five other Council members from running for reelection in 1994.

At the commencement of the Petitioners' argument in this matter, the Chairman interrupted undersigned counsel in order to inquire whether undersigned counsel was registered as a lobbyist. Regardless of the fact that this issue was irrelevant and had no basis in fact, an interrogation took place during which the Chairman on several occasions informed counsel that he was in violation of County law, but

that counsel could continue to argue on behalf of the [appellants] despite of [sic] the violation. Not only was this personal attack unprofessional since it was unrelated to the hearing before the District Council, it cast a pall over the hearing which was prejudicial to the [appellants]. Subsequent to the hearing, the Chairman filed a complaint against undersigned counsel with the Attorney Grievance Commission, the State Board of Ethics, the Prince George's County Board of Ethics and the Prince George's County Bar Association. While this complaint is not relevant to this matter, it is important to note that it is based on incorrect law and factual claims. The complaint is being investigated; however, it is on hold pending issuance of an advisory opinion.

In their brief, appellants allege that at the commencement of the hearing, after questioning counsel about registering as a lobbyist, "[t]he Chairman flatly declared that counsel was 'in violation of law' and that he would 'send a letter to the board of ethics', [sic] but, evoking laughter from the other Council members, politely asked counsel to 'continue.'" Appellants further allege that "one Council member asserted that counsel implied a racial remark, when no such remark was made. Another Council member attacked a citizen opponent because she believed his comments implied racial concerns, even though he did not intend it."

Appellants assert that these allegations of personal bias are sufficient to warrant the inclusion of the transcript into the record in order to substantiate their assertion that the Council's bias rendered its approval of A–9901 invalid.[10] With respect to the Council's approval of A–9900, this assertion has been rendered moot because, as we explained above, the circuit court was without authority to review that application. Furthermore, since A–9901 must be remanded to the Council for the reasons stated above, appellants' assertion that the circuit court committed error is also rendered moot—at least for the time being. Of course, if after remand, the Council

---

**10.** According to appellants, the record in this type of case normally does not include a transcript of the oral argument before the Council.

again approves A–9901 and appellants file another petition for judicial review in the circuit court following the Council's revised decision on A–9901, the issue of personal bias may rear its head again. If that should occur, we make the following observations for the benefit of the reviewing circuit court.

The general rule is that judicial review of administrative decisions is limited to whether substantial evidence on the record supports the agency's decision. *Public Serv. Comm'n v. Patuxent Valley Conservation League,* 300 Md. 200, 216, 477 A.2d 759 (1984). In limited circumstances, however, the circuit court may consider material beyond the actual record in the case. For example, where there is a "strong showing" of bad faith or improper procedure it may be proper for the circuit court to consider "post-administrative testimony of individual agency decision makers, and any additional post-administrative 'evidence' which such testimony may lead to...." *Id.* at 217, 477 A.2d 759.

*Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 289 A.2d 303 (1972), is an example of when it is proper for the circuit court to consider matters outside of the administrative record for the purpose of scrutinizing an agency's decision as arbitrary, capricious, or discriminatory. In *Aspen Hill,* a rezoning applicant petitioned the circuit court for judicial review of a zoning decision denying commercial zoning. *Id.* at 309, 289 A.2d 303. During these proceedings, the applicant sought to show the arbitrary, capricious and discriminatory nature of the actions of the zoning agency by submitting to the circuit court subsequent zoning decisions of the zoning agency (issued during the pendency of the applicant's circuit court appeal) wherein commercial zoning was granted on a nearby tract "on basically the same evidence." *Id.* at 316–17, 289 A.2d 303. The circuit court viewed these decisions as extraneous and would not consider them. *Id.* at 316, 289 A.2d 303. The Court of Appeals reversed the trial court's ruling, stating:

This Court has many times held that upon appeal the Circuit Court in its review of the evidence is bound by the record made before the governmental body from which the appeal is taken. However, these decisions are directed to matters which would enhance or diminish the evidence supporting or challenging the application, such as evidentiary matters bearing on mistake or change or need and were not, in our opinion, intended as authority to exclude matters of public record which *directly relate to the arbitrary, capricious or discriminatory quality of the conduct of the zoning authority which affects the property of the applicant.*

*Id.* at 316–17, 289 A.2d 303 (1972) (emphasis added) (citations omitted).

▮ Moreover, it is well established that bias or prejudice of an agency decision maker related to issues of law or policy are not disqualifying. *Turf Valley Assocs. v. Zoning Bd. of Howard County,* 262 Md. 632, 645, 278 A.2d 574 (1971). Personal bias or prejudice going beyond sincere political and philosophical views is, however, another matter. *Id.* at 646, 278 A.2d 574. *See, c.f., Fogle v. H & G Restaurant, Inc.,* 337 Md. 441, 654 A.2d 449 (1995) ("To prove that the State demonstrated bias in promulgating COMAR 09.12.23, the Appellees would have to show that the Commissioner acted with 'an unalterably closed mind on matters critical to the disposition of the proceeding.' " (quoting authority omitted)).

▮ In addition, MD.ANN.CODE art. 28, § 8–106(h) (1995) is highly relevant as to whether appellants may supplement the record to show bias. That subsection states:

The [judicial] review shall be conducted by the [circuit] court without a jury. *In cases of alleged irregularities in procedure before the district council not shown in the record, testimony thereon may be taken in the court.* The court upon request shall hear oral argument and receive written briefs.

*Id.* at § 8–106(h) (emphasis added). Under the italicized portion of subsection (h), allegations of personal bias may constitute allegations of "irregularities in procedure before the

district council not shown in the record....." As a result, the circuit court was at least authorized, upon the requisite "strong showing," to allow appellants to present "outside" evidence of matters not reflected in the administrative record to support their argument that the Council's approval of A-9901 was rendered inoperative as a result of personal bias on the part of certain Council members.

In addition to subsection (h), a circuit court reviewing a decision of the Council is necessarily empowered to consider competent evidence of personal bias and improper procedure by virtue of subsection (i). Under § 8–106(i), the circuit court "may reverse or modify the decision" of the Council "if the substantial rights of the petitioners have been prejudiced because the administrative findings, inferences, conclusions, or decisions are ... in violation of constitutional provisions; ... made upon unlawful procedure; or ... [are] arbitrary or capricious." It is not difficult to imagine a case in which certain improprieties occurring "outside" of the strict administrative record could warrant reversal of the Council's decision under these standards.

Thus, in light of the foregoing principles, the circuit court, under appropriate circumstances, should allow reliable evidence to prove personal bias. Although we have not reviewed the transcript in question, and do not express an opinion regarding whether appellants' allegations of personal bias are worthy of further consideration, we nonetheless observe that appellants' request to supplement the record with the transcript was not designed to enhance the substantive evidence against the rezoning applications. To the contrary, appellants sought only to substantiate their claims that the personal bias of the Council Chairman rendered approval of the rezoning applications arbitrary, capricious, or discriminatory. If the issue should surface again in the circuit court, the circuit court should consider the proffered evidence which was a part of the agency record.

At this point, it is appropriate to address appellees' Motion to Strike filed with this Court. Appellees filed this motion

because appellants included, in the appendix of their brief to this Court, documents that were not in the record. These documents relate to the Council Chairman's ethical grievance against appellants' counsel for failing to register as a lobbyist, including the Chairman's letter to the Attorney Grievance Commission, Bar Counsel's letter to counsel and to the Chairman stating that the grievance was dismissed, and the opinion of the Board of Ethics for Prince George's County.[11] According to appellants, these documents assist in substantiating their claim that the Chairman harbored personal bias against counsel that poisoned the proceedings. Appellees object to the inclusion of these documents and references thereto on this appeal because they are outside of the record, MD.RULE 7–206(a), and request this Court to strike such matters from appellants' brief.

 Appellants are correct that a party may not supplement the record with documents that are not part of the record. *See Kemp–Pontiac–Cadillac, Inc. v. S & M Constr. Co.*, 33 Md.App. 516, 524, 365 A.2d 1021 (1976) ("The parties are not permitted to supplement the record by inserting any other matter into their record extract."); *Community Realty Co. v. Siskos*, 31 Md.App. 99, 102, 354 A.2d 181 (1976) (same). As a result, we shall, as we must, disregard and not consider such extraneous materials. *See Frosburg v. State Dept. of Personnel*, 37 Md.App. 18, 32, 375 A.2d 582 (1977); *Siskos*, 31 Md.App. at 104, 354 A.2d 181. Our reason for explaining the nature of the supplemented documents was not substantive, but was merely to make clear that counsel was wrongly accused of ethical violations.

---

11. These documents demonstrate that, following oral argument before the Council, the Chairman did in fact report counsel to the Attorney Grievance Commission for not registering as a lobbyist, but Bar Counsel subsequently dismissed the complaint because "[a]n insufficient basis was found to consider the conduct of the Respondent to be in violation of the Maryland Rules of Professional Conduct." Also in the appendix to appellants' brief is an opinion of the Board of Ethics for Prince George's County concluding that counsel was not required to register as a lobbyist.

This holding, of course, does not preclude appellants in the future from offering these materials as evidence in support of their claim of personal bias. Furthermore, we agree with appellants that MD.ANN.CODE art. 28, § 8–106(g) (1995) does not govern the procedure for presenting additional "outside" evidence of irregularities affecting the proceedings before the Council, such as personal bias. Section 8–106(g) provides:

> If written application by petition to show cause is made to the court before the date set for hearing for leave to present additional evidence on the issues in the case either by the party appealing or any party in interest, and if it is shown to the satisfaction of the court after a hearing thereon that the additional evidence is material and that there were good reasons for failure to present it in the proceedings before the district council, the court shall order that the additional evidence be taken before the district council upon conditions which the court deems proper, and the case shall be forthwith remanded to the district council for the taking of additional testimony. In cases in which the additional evidence is taken before the district council, the district council may modify or reverse its previous findings and decision by reason of the additional evidence and shall file with the reviewing court, to become part of the record, the additional evidence together with any modifications or new findings or decision.

*Id.* at § 8–106(g). A plain and reasonable reading of this provision reveals a procedure for dealing with the supplementation of substantive evidence not originally presented to the Council that goes directly to the merits of the Council's zoning decision.

In contrast, subsection (h), as discussed above, deals with the presentation in circuit court of "outside" evidence of alleged irregularities in the proceedings. After all, in practical terms, it would make little sense and would likely be an exercise in futility for the circuit court to remand the case to the Council for an applicant to present to the Council non-substantive collateral evidence of improper personal bias on the part of the Council, so that the Council may reconsider its

own decision in light of such evidence. By subsection (h), the legislature has clearly designated the circuit court as the arbiter of such evidence during judicial review. Thus, if the issue arises and the circuit court finds a sufficient basis to allow appellants to pursue their argument of personal bias, the circuit court may allow appellants to present "outside" evidence directly to the circuit court without remand pursuant to subsection (h).

## IV

We are next called upon to decide whether the circuit court erred in determining that the Council was not required to remand the case to the ZHE for failure of the administrative file to contain certain documents. PRINCE GEORGE'S COUNTY CODE § 27-187(b)(1) provides:

> At least thirty (30) days prior to the public hearing, the original Map Amendment application file shall be available for public examination in the Office of the Zoning Hearing Examiner, and a copy of the file shall be reviewed by anyone, and copies of its contents may be obtained at a reasonable cost.

The record reflects that Northpeak's Basic Plan [12] and traffic study were not included in the Map Amendment application file in the ZHE's office as of the day of the hearing.[13] As a result, appellants argue that these materials were not available for public inspection (in particular, not available to appellant Senecal who allegedly unsuccessfully requested to view the Basic Plan at the ZHE's office before the hearing), and request a "remand for a new hearing so that they may

---

[12]. In Prince George's County, an application for a comprehensive design zone must include a "basic plan," which details somewhat the proposed development. *See Floyd,* 55 Md.App. at 248, 461 A.2d 76.

[13]. At the March 17, 1994 hearing, the ZHE stated that the file did not contain a copy of the Basic Plan, and recognized that its absence from the file was a "technical violation." Upon the ZHE's request, a copy of the Basic Plan was added to the file. The transcript from that hearing further indicates that Northpeak's traffic study was also missing from the file, and not added thereto until that time.

prepare properly and enter evidence into the record before the [ZHE].”

We disagree that the violation of § 27–187(b)(1) warrants a new hearing. We further disagree that the focus should be on whether this provision is mandatory by virtue of the provision's use of the word "shall." We need not reach that issue because, quite simply, the record is devoid of any indication that appellants were prejudiced by the violation of § 27–187(b)(1).

Preliminarily, we shall consider this argument only as it relates to the approval of A–9901. This is because our holding that the circuit court was without authority to review the Council's approval of A–9900 renders moot appellants' argument that the violation of § 27–187(b)(1) requires a remand for a new hearing with respect to that rezoning application.

As previously stated, we fail to see how appellants, including appellant Senecal, were prejudiced in any material way by the violation of § 27–187(b)(1). There was no substantive hearing before the ZHE on March 2, 1994. Rather, that first day can only be characterized as a preliminary scheduling hearing. During this time, the parties and the ZHE primarily discussed postponements and scheduling conflicts, in addition to whether the interested parties had copies of various exhibits. No evidence was produced. During that first day, the ZHE specifically directed that a copy of the Basic Plan be given to appellants' counsel. The matter was then adjourned until March 17, 1994, the day on which the parties presented their respective cases. Two weeks in advance of the substantive hearings before the ZHE, therefore, appellants' counsel was in possession of a copy of the Basic Plan. That counsel's clients may not have directly viewed the plan is of little moment. What is important is that counsel was in possession of that document well in advance of the evidentiary hearing and had ample inspection and preparation time. There simply was no prejudice to appellants or their counsel by the fact that a copy of the Basic Plan was not contained in the files at the ZHE's office.

We now focus our attention to the traffic study. During the March 17, 1994 ZHE hearing, appellants' counsel objected that the traffic study did not make it to the rezoning application file until that day. This objection was lodged immediately before Northpeak's traffic expert (who prepared the study) was about to testify. Specifically, counsel stated that he was "going to have to object that there's a technical violation," and called into question whether the "entire hearing is appropriate." [14] After direct examination of the traffic expert, the following exchange occurred:

APPELLEES' COUNSEL: That's all I have of this witness.

APPELLANTS' COUNSEL: I just got the traffic report today.

ZHE: So did I. You have all night to go through it word for word.[15]

Appellant's counsel then cross-examined the traffic expert until 5:00 p.m. Although counsel did not have the same amount of preparation time that he did with respect to the Basic Plan, from our review of the record, we cannot conclude that any prejudice to appellants resulted. The ZHE extended substantial latitude to counsel and did not pressure or rush counsel during his examination of the traffic expert. Furthermore, before adjourning the proceedings on March 21, 1994, the ZHE stated that closing statements from the parties would occur on March 28 and a decision filed on March 29. Although a transcript from the March 28 proceedings is not in the record, we may fairly conclude that appellants' counsel had

---

**14.** At this point, after the ZHE noted the objection, appellant Senecal's wife (Bridget Senecal) interrupted the proceedings to inform the ZHE that appellant Senecal unsuccessfully attempted to obtain the Basic Plan—"Not the Traffic Report."

**15.** Clearly, the ZHE meant what he said. Shortly after the questioning of the traffic expert concluded, in response to a participant's query regarding how long the ZHE planned to stay, the ZHE stated, "Forever. Until we finish." Although it did not last "forever," the hearing eventually concluded at 7:25 p.m., and began again at 10:00 a.m. on March 21, 1994.

a further opportunity to argue to the ZHE any shortcomings of the traffic report.

■ In sum, under the totality of the circumstances and upon our review of the record, we are absolutely confident that any error associated with the technical violation of § 27–187(b)(1) had no impact on the outcome of the proceedings below, and was, therefore, harmless error. *See, e.g., Jacocks v. Montgomery County,* 58 Md.App. 95, 107, 472 A.2d 485 (1984) (an agency's erroneous admission of evidence is prejudicial and reversible if, under the totality of the circumstances, it appears to be reasonably probable that the error affected the agency's determination). Our holding in this respect should not be construed as this Court's endorsement of the manner in which the application file was maintained. The "powers that be" in Prince George's County owe it to their citizenry to adhere more faithfully to such provisions, which are obviously designed for the public benefit.

## V

The final question presented by appellants is whether the circuit court erred in determining that the Council was not required to remand the case upon alleged amendments of application A–9900. In light of our holding that the circuit court was without authority to review the approval of A–9900, we need not resolve this question because appellants' argument relates solely to an alleged amendment of A–9900. In other words, the issue is moot.

## CONCLUSION

Our holdings are summarized as follows. First, the circuit court was without authority to entertain a review of the Council's approval of A–9900. Therefore, all issues pertaining to that application are moot, the Council's approval of A–9900 stands, and the circuit court's denial of appellees' motion to dismiss the appeal of A–9900 is reversed and remanded with instructions to dismiss the petition for judicial review of A–9900. Second, the circuit court's ruling that the Council's

decision approving A–9901 contained sufficient findings of fact and reasonably articulated conclusions of law is reversed, and the case of A–9901 must be remanded by the circuit court to the Council for a decision comporting with the legal principles explained herein. Third, if, after remand, appellants should seek judicial review in circuit court of the Council's revised decision respecting A–9901, and assert again the issue of personal bias, the circuit court shall consider appellants' supplementation of record request in accordance with our within directives. Fourth, the circuit court correctly determined that the Council was not required to remand the case for failure of the rezoning application file in the ZHE's office to contain a copy of the Basic Plan and traffic study. The circuit court, therefore, is affirmed in this limited respect. Finally, in light of our holding in the first issue presented, the issue, i.e., the alleged amendment of A–9900, is moot, and the circuit court was without authority to decide the matter.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE HALF BY APPELLANTS AND ONE HALF BY APPELLEES.**